WALTER HANLON, Appellant, v. MACFADDEN PUBLICATIONS, INC., Respondent.

Argued April 4, 1951; decided June 1, 1951.

*John B. Doyle, Thomas R. McTigue, Frederic A. Johnson* and *Hugh G. Perry* for appellant. I. Dismissal of the first cause of action alleged in the complaint, on the law, was error because, taken with the bill of particulars, it alleges a sufficient cause of action in fraud and deceit. (*Green* v. *Doniger,* 300 N. Y. 238; *Ochs* v. *Woods,* 221 N. Y. 335; *Reno* v. *Bull,* 226 N. Y. 546; *Advance Music Corp.* v. *American Tobacco Co.,* 296 N. Y. 79; *Morgan* v. *Skiddy,* 62 N. Y. 319; *Delano* v. *Rice,* 23 App. Div. 327; *Adams* v. *Gillig,* 199 N. Y. 314; *Albert* v. *Title Guar. & Trust Co.,* 277 N. Y. 421; *Isman* v. *Loring,* 130 App. Div. 845; *Webster* v. *Longstaff,* 263 App. Div. 930.) II. Plaintiff proved a flagrant fraud which induced him to continue in defendant's employ at a reduced rate of compensation. (*Davis* v. *Long Island R. R. Co.,* 301 N. Y. 450; *Sadowski* v. *Long Island R. R. Co.,* 292 N. Y. 448; *Horton* v. *New York Central R. R. Co.,* 237 N. Y. 38; *Middleton* v. *Whitridge,* 213 N. Y. 499; *Blum* v. *Fresh Grown Preserve Corp.,* 292 N. Y. 241; *Matter of Whipple,* 294 N. Y. 292; *Loewinthan* v. *Le Vine,* 299 N. Y. 372; *Rosen* v. *Equitable Paper Bag Co.,* 286 N. Y. 410; *Horowitz* v. *La France Industries,* 274 App. Div. 46; *Vail* v. *Reynolds,* 118 N. Y. 297; *Weigel* v. *Cook,* 237 N. Y. 136; *Von Au* v. *Magenheimer,* 126 App. Div. 257, 196 N. Y. 510.) III. Defendant's fraud deprived plaintiff of earned commissions, $33,579, retained by defendant as the fruits of its fraud. This was the proper measure of damages, pleaded, proved and adopted by the parties. (*Baily* v. *Hornthal,* 154 N. Y. 648; *Homin* v. *Cleveland & Whitehill Co.,* 281 N. Y. 484; *Sager* v. *Friedman,* 270 N. Y. 472; *Reno* v. *Bull,* 226 N. Y. 546; *Urtz* v. *New York Central & H. R. R. R. Co.,* 202 N. Y. 170; *Ochs* v. *Woods,* 221 N. Y. 335; *Allaire* v. *Whitney,* 1 Hill 484; *Northrop* v. *Hill,* 57 N. Y. 351; *Whipple* v. *Brown Bros. Co.,* 225 N. Y. 237.) IV. Defendant's misrepresentations

regarding the Salary Stabilization Board were also not true as affecting the legal status of plaintiff's rights under the authority of the board. (*Arman* v. *Structiform Engineering Co.,* 147 Neb. 658.)

*Henry E. Schultz, Joseph Schultz* and *Joseph E. Ginn* for respondent. I. Plaintiff did not plead or prove a cause of action. (*Ming* v. *Woolfolk,* 116 U. S. 599.) II. In the fall of 1943, at the very time of the alleged misrepresentations, the Salary Stabilization Unit of the United States Treasury Department had in fact ruled that commissions similar to those payable to plaintiff could not be continued if the amounts to be received exceeded the commissions earned in the year 1942. The alleged representations regarding Stabilization Board policy, which defendant denied having given as a reason for its change of policy, were in fact true and therefore could form no basis for a cause of action. III. There was no basis for an award of damages for the years 1945 and 1946.

CONWAY, J. This is an action to recover damages sustained by plaintiff by reason of the deceit of the defendant, his employer. Plaintiff commenced to work for defendant in 1921 and by 1935, was advertising manager of a group of defendant's magazines, earning, in addition to a base salary, a bonus or commission of 2% on all "billing" or sales of advertising space above a certain quota. This was an overriding commission in that plaintiff sold no advertising space himself but supervised the work of a group of salesmen, his commission being based upon the sales of such subordinate employees. Compensation on that basis continued through 1943. For the next year, 1944, plaintiff's commission rate was reduced from 2% to one half of 1% on certain billing above quota, and it is with the circumstances surrounding that reduction that we are here concerned.

Plaintiff had no formal contract of employment with defendant. He could have been discharged at any time or could have resigned at any time. The defendant employer at all times had the right to fix his compensation, to reduce it or to change it, without assigning any reason therefor. The employment was thus a hiring at will and the reduction in the commission rate in 1944 constituted a material change in the terms of that

hiring, resulting in a new or a rehiring. (*Watson* v. *Gugino*, 204 N. Y. 535, 541; *Horowitz* v. *La France Industries*, 274 App. Div. 46, 47.)

The present action is based upon the claim that defendant, by false and fraudulent representations, induced plaintiff to assent to the rehiring and to continue in defendant's employ at the lowered commission rate, thereby causing him damage. Since plaintiff's complaint has been dismissed as a matter of law after a jury verdict in his favor, we consider the facts in the light most favorable to plaintiff and give him the benefit of every favorable inference which may reasonably be drawn from the evidence.

On several occasions in the latter part of 1943, two of defendant's executives talked with plaintiff about his commission rate. One, defendant's vice-president in charge of advertising, told plaintiff that the Salary Stabilization Board (a wartime agency organized in the Treasury Department to regulate wages and salaries to aid in preventing inflation, hereafter referred to as Board) was " concerned about all the money that the advertising department was making " and was threatening " to lock the top ", i.e., to freeze the compensation of the advertising managers and salesmen at the dollar amount earned the previous year. Plaintiff objected that the principle of the 2% bonus was important to him, that his base salary was small in comparison with the character and responsibilities of his position but that he had been content to continue in defendant's employ at a fairly nominal salary " and take my income from the bonus arrangement * * *. When business was good it paid off well; when business was bad the company didn't have to defray as much." Plaintiff said he thought that his bonus arrangement was " a time-honored one in American business " and, in effect, that his services were worth at least what he had theretofore been receiving for them.

The vice-president said that he agreed with him. He urged plaintiff to " keep your shirt on " and promised that " he was going to fight it."

Subsequently, plaintiff inquired of him as to " how he was getting along in his fight ", and was told that no determination had yet been made by the Board. On other occasions, the vice-president told him that he " was going to go before the Board

himself, along with our comptroller, and fight it himself in person ", and, later, that he had been before the Board and had presented the case but that no decision had been made. Finally, he told plaintiff that, in view of the attitude of the Board, the defendant had decided to cut the commission rate for managers to the level above noted. The decision, he said, was " designed to placate the Board " so that the Board would not " lock the top completely." Plaintiff replied that he thought the vice-president had done " a very poor selling job on the Board " and requested permission " to go to the Board and state my own case ", but that was refused, the vice-president saying that " he couldn't have his managers trooping down to the Board with exceptions." Plaintiff said he would be happy " to play along with whatever was good for the country in the war " but that he thought the issue should be met squarely, either compensation should be frozen at the previous year's dollar amount or the long-standing commission rate honored and continued without reduction in the rate. To this, the vice-president replied that plaintiff " should be a good soldier ".

Plaintiff had similar conversations with defendant's supervising advertising director and later its president, who likewise told plaintiff that the reduction of his commission rate was made " in an effort to placate the Board ". " In all of these many discussions ", plaintiff said, " the issue had been the Salary Stabilization Board. It was the *bete noir,* if you want to use the expression." He further stated that he had believed what these two officers had told him about the necessity of the reduction in commission rate in order to placate the Board and was induced by their statements to submit to the cut, for " I had worked for them for 20 years, and I believed what they told me." Plaintiff's testimony as to his position in the dispute was supported by the introduction of certain documentary evidence, office memos which he had dictated at the time to the two officers mentioned.

Plaintiff thereafter continued in defendant's employ, accepted the cut and was paid at the reduced commission rate for 1944, 1945, and through September of 1946, when he left defendant's employ. Plaintiff then investigated the matter further by communicating with the former head of the Salary Stabiliza-

tion Board in New York City and learned that defendant's representation as to the necessity of the reduction to placate the Board '' was a cock-and-bull story ''.

Plaintiff also read into evidence portions of examinations before trial of defendant's two executives already referred to, who conceded therein that they had never appeared before the Board in connection with plaintiff's commission rate, that the Board had made no objection that the overriding commissions of the managers were too high, that there had been no direction by the Board to cut them down and that no threat had been made by the Board to freeze compensation at the dollar level of the previous year. In other words, the representations to plaintiff were false.

The case was submitted to the jury under a charge as to which there were no exceptions or requests by defendant. In the course of his charge, the court said: '' As a matter of the damage that the plaintiff is entitled to, if he is entitled to anything, he is entitled to the difference between what he would have gotten at two per cent and what he did get at one-half of one per cent. That is the measure of damage.''

The jury at first returned a verdict for plaintiff without specifying the amount thereof. The jury was sent back for further deliberations but returned almost immediately asking for instructions '' as to the amount of damages requested by the plaintiff in this action.''

The court then said: '' The amount that the plaintiff asks for is $33,579. I must say, however, that you must use your own judgment in arriving at any verdict. You have got to take different things into consideration. You are not bound by that figure. That is simply the amount that is asked. You must take into consideration that had he continued to work at that time, whether he would have earned that amount, whether by reason of illness, death, or any of the other elements, they might have been lessened. You can't speculate in any verdict. If you are satisfied that he would have continued, then you will apply this other figure as that which is offered by the plaintiff, after having taken, of course, into consideration the other things involved, as I have suggested. You are not bound by that figure. This is the figure the plaintiff asks for.''

Defendant's counsel again took no exception, but instead asked for an additional charge that, even if the jury find that " a fraud has been committed on the plaintiff under which he is entitled to compensation ", they could in their discretion award damages " for one year, two years, two and one-half years, or no years at all." The court so charged and defendant's counsel further requested that there be read to the jury the " different amounts that he [plaintiff] has computed would have been due him for his commissions for the different years of 1944, 1945 and 1946." That was done. The jury then returned a verdict in favor of plaintiff for the full amount, $33,579.

" The essential constituents of the action [for deceit] are tersely and adequately stated as representation, falsity, *scienter*, deception and injury." (*Ochs* v. *Woods*, 221 N. Y. 335, 338, and cases there cited; see, also, *Reno* v. *Bull*, 226 N. Y. 546, 550; Restatement, Torts, § 525; Prosser on Torts, pp. 705–706.)

In the case at bar, the evidence fully justifies findings that defendant represented to plaintiff that a reduction in his commission rate had been made necessary by the attitude of the Salary Stabilization Board; that this representation was made for the purpose of inducing plaintiff to consent to the cut in commission rate and to remain in defendant's employ at the lowered rate; that the representation was entirely false and fraudulent, and known by defendant to be so, in that defendant had never been in any difficulty with the Board, its executives had never appeared before the Board in connection with plaintiff's commission rate, and the Board had made no objection as to the amount of plaintiff's commissions; that plaintiff believed the false representation and relied upon it; that his reliance was reasonable since he was not permitted to go before the Board personally to check its accuracy; and that induced by and in reliance upon the false representation, plaintiff submitted to the cut in his commission rate, and continued in defendant's employ, rendering the same services as before but at a lower rate of compensation. All of these findings are amply supported by the proof and were implicit in the jury's verdict in plaintiff's favor. They cannot be seriously challenged now.

The dispute in the case at bar, at least upon the appeals, centers upon the question whether plaintiff sustained any damage or injury by relying upon the false representation. At the trial, as above noted, this point was not raised by defendant. On the contrary, the Trial Judge charged, without exception, that if the jury found that defendant had misrepresented to plaintiff, then he was damaged thereby and the measure of damage, with certain qualifications, was " the difference between what he would have gotten at two per cent and what he did get at one-half of one per cent." Indeed, defendant's counsel himself caused the dollar amount of such difference, for each of the years involved, to be read to the jury. Nevertheless, it is argued here by the defendant that the plaintiff did not prove that he was damaged by the false representation, and that consequently he has not established a cause of action.

Actual damage or injury to the plaintiff is, of course, an essential element of the action for deceit. (*Urtz* v. *New York Central & H. R. R. R. Co.*, 202 N. Y. 170, 173; *Ochs* v. *Woods, supra; Sager* v. *Friedman*, 270 N. Y. 472, 479; Prosser on Torts, p. 768.) When, however, we accept plaintiff's proof as true and give him the benefit of every favorable inference therefrom, there can be no doubt that he has here met that requirement. It is a permissible inference on this record that plaintiff would not have continued in defendant's employ if he had known that defendant, in reducing his commission rate, was deliberately reducing his compensation for the benefit of the company, and was not acting under the compulsion of a governmental agency. What other purpose could defendant have had in making the false representation but to attempt to insure plaintiff's continuance in its employ? The inference is plain that defendant feared that if plaintiff were told the truth he would leave defendant's employ and go elsewhere in order to maintain his established commission rate. By deliberately falsifying the facts, defendant induced plaintiff to continue to render his services to defendant but at a lower rate of compensation. Plaintiff's area of choice was unlawfully circumscribed. He relied upon the false representation, continued to give his services to defendant, and accepted in return a rate of compensation lower than he had been receiving. Defendant's statements to plaintiff to " keep your shirt on " and that it would " fight "

the case before the Board would alone justify a finding that plaintiff would have left defendant if his rate of compensation were merely reduced as a matter of company policy and not because of the Board. In effect, plaintiff was asked to stay on with defendant and was told that his services were actually worth what he had been receiving for them, but was falsely informed by defendant that for reasons beyond its control it was prohibited by law from paying him that value. This evidence, as a jury could find, established both the true value of plaintiff's services and the fact that he had been induced to go without part of such true value through the defendant's deceit. If a jury should so find, they could then determine the extent of the injury and damage that was so inflicted upon the plaintiff.

The measure of damages in an action for deceit is firmly established. Plaintiff is entitled to indemnity for the actual pecuniary loss sustained as a direct result of the wrong. (*Sager* v. *Friedman, supra,* p. 481; *Reno* v. *Bull, supra,* pp. 552–553; 1 Clark, New York Law of Damages, § 421.) The instant case, while unusual on its facts, clearly calls for the application of this general rule. Plaintiff, of course, was not induced to part with any tangible object such as land, chattels or money as in the typical case of deceit. Instead, he parted with personal services. He was induced to render those services for a price fraudulently lowered. In the ordinary case of deceit, the measure of damage would be " the difference between the value of the thing bought, sold or exchanged and its purchase price or the value of the thing exchanged for it ". (Restatement, Torts, § 549, par. [a].) The only distinction in the present case is that the jury was required to calculate the value of plaintiff's services instead of the value of the " thing bought, sold or exchanged ". The true measure of damages here is the difference between the value of plaintiff's services and the price he was actually paid for them by reason of defendant's deceit. That, in effect, we think was the measure of damages applied in the trial court when the two portions quoted from the charge (*supra,* p. 508) are read together. The rule might have been expressed more directly and explicitly, but defendant, which took no exceptions and made no requests but instead concurred in the charge as given, cannot now complain on that score.

If the plaintiff were induced by false and fraudulent representations to render services for defendant gratuitously, without any compensation therefor, there could certainly be no doubt that he would have sustained injury as a result of defendant's wrong and that the measure of damages would be the reasonable value of the services fraudulently procured. Thus, it is said in Sedgwick on Damages (Vol. 2, § 673c), " * * * so where the performance of the service by the servant is obtained by fraud of the master, who by his fraud induces the servant to serve gratuitously, the servant on discovering the fraud is entitled to recover the value of his services." The measure of damage in that situation is the difference between the value of the services and zero, the amount received being nothing since the services were rendered gratuitously. The instant case differs from that situation only in degree. Here, plaintiff received some compensation for his services; but the rate of compensation was fraudulently lowered by the defendant employer. Plaintiff therefore was entitled to recover the difference between the true value of his services and the price he received for them. (Cf. *Rickard* v. *Stanton,* 16 Wend. 25, 26–27.) It so happens that the jury in the case at bar decided that the true value of plaintiff's services was an amount computed on the basis of the commission rate plaintiff enjoyed before the fraudulent reduction, even though, under the court's charge, the jury could have arrived at a lesser figure.

The judgments should be reversed and a new trial granted, with costs to abide the event.

LOUGHRAN, Ch. J., LEWIS, DESMOND, DYE, FULD and FROESSEL. JJ., concur.

Judgments reversed, etc.