Matthew M. Levy, J.
Ming Hin Chin was the owner in fee of a certain parcel of land, of the building situated thereon, *423 and of a laundry which he operated therein. Chin* agreed to sell, and Chin Kong Sook agreed to buy, the premises and the business for $16,000, which sum Sook agreed to pay. In accordance with the terms of the agreement, Sook paid Chin $4,000 on account. The balance of the cash purchase price was to be paid by Sook upon the transfer of title. The arrangements between Chin and Sook were basically oral, but a receipt in Chinese was given for the $4,000 paid on account and (in accordance with a local custom) the transaction was advertised in the Chinese newspapers as notice to the seller’s creditors.
Neither Chin nor Sook knew the English language, spoken or written. Nevertheless, the -parties did not directly consult counsel. Instead, they relied upon the knowledge, experience and good offices of one James L. Fletcher, also a Chinese and a businessman in the Chinese community of New York City and one who was versed in the use of the English language. Chin was in difficult financial straits, and Fletcher was one of Chin’s creditors — both secured and unsecured. To facilitate the consummation of the transaction, they agreed that Chin would execute a deed and deliver it to Fletcher and Fletcher was to turn the deed over to Sook upon receiving on Chin’s behalf the balance of $12,000 due under the contract. Fletcher was to be paid for this escrow service and was to be reimbursed for his expenses (legal and recordation) in a specified amount. To enable Fletcher to have a deed prepared with proper property description, Chin turned over to Fletcher the deed which Chin had received from his own grantor some years before. Payment was made to Fletcher for his charges, and he arranged to have his lawyer handle the transaction. A new deed was typed with Chin as grantor, which deed Chin signed in blank and which was retained by Fletcher.
Sook never paid the contract balance of $12,000 and Sook never received title to the property. Instead of obtaining the purchase price balance from Sook and turning the deed over to him or his nominee as purchaser, Fletcher caused his own name as grantee to be inserted in the deed and asserted title to the property in his own right. Foreclosures were proceeded with by other secured creditors — both as to the real estate and the principal chattels. Chin’s equity and interest were thus destroyed — by the foreclosures, on the one hand, and the deed *424 in favor of Fletcher, on the other, with the further result, because of the latter circumstance, that the advantage to Chin arising from the fact that realty and personalty and business were all unitedly owned by one person (and therefore the more readily disposable) was obliterated.
Chin thereupon, in a first cause of action, sued Fletcher and Sook in fraud and deceit, to recover the sum of $12,000, alleging that Sook never intended to pay this balance of the purchase price to the plaintiff and that Fletcher never intended to convey to Sook, as agreed. In a second cause of action, the plaintiff sued Sook and Fletcher and Elsie Moy and Tsoy Wei Laing (the latter being certain foreclosure creditors and purchasers) charging a successful unlawful conspiracy to deprive him, the plaintiff, of his property, and seeking damages in the sum of $12,000. The defendant Sook, in addition to interposing a denial, alleged the plaintiff’s failure to perform, and counterclaimed to recover back the $4,000 paid the plaintiff on account. Replying thereto, the plaintiff sought recovery over as against the other defendants in the event that the defendant Sook were successful on his counterclaim. Fletcher and the other defendants all answered by way of general denials.
The action came on for trial before court and jury. At the end of the plaintiff’s case, or when all the parties had rested, the plaintiff discontinued his causes of action as against the defendant Sook, I dismissed the cause against the defendant Laing, and I directed a verdict in favor of Sook against the plaintiff for the sum of $4,000. I instructed the jury that they might find for the plaintiff on the first cause of action, and against him on the second. I further charged the jury that before they might find against the defendants on the second count, they must first conclude that the defendant Fletcher was liable on the first cause. And, as to damages, I in effect charged the jury that (in the event that issue was reached) they might find for the plaintiff in the sum of $12,000, but no more and no less. I did not submit to the jury the plaintiff’s claim over against Fletcher for the $4,000, charging the jury that they were to be concerned only with the plaintiff’s claim in chief, as alleged in the complaint, for the unpaid $12,000. No exceptions were taken by the defendant Fletcher to any portion of the charge or for the refusal to charge in any respect. The jury rendered a verdict for the plaintiff and against the defendant Fletcher on the first cause of action in the sum of $12,000, and for the defendants against the plaintiff on the second cause.
The defendant Fletcher now moves for leave to take exceptions nunc pro tunc in respect of the court’s charge to the jury. *425 He also moves to set the verdict aside as contrary to law. The plaintiff moves for recovery on his claim over for $4,000 against Fletcher. The other defendants move for costs. Each of these applications will now be considered.
First, as to the request of the defendant Fletcher that certain exceptions to the main charge and to the refusal of the court to grant certain requests (previously submitted) be permitted to be noted now, and as of a time prior to the rendition of the verdict.
At the outset, I must point out that full opportunity was granted to this defendant as well as the other parties (and duly utilized by the others) to record exceptions in respect of the charge when it was completed and while the jury were still in the courtroom. No such exceptions were sought to be presented by the defendant Fletcher- then, while the jury were deliberating, or before they had brought in a verdict. Section 446 of the Civil Practice Act clearly sets forth the governing-procedure: “Exceptions which must he taken. Exception to the charge given to the jury by the court or any part thereof and to the granting or refusal of requests to charge, shall not be deemed to have been taken unless expressly noted by the party adversely affected before the jury have rendered their verdict.”
The fact that requests to charge were, pursuant to the court’s direction, submitted in advance of the charge, does not, in my view, obviate the requirement that, before the jury have rendered their verdict (at the very latest), an exception must be noted to the failure of the court to charge any specific request. A contrary determination would grant an obviously unfair forensic advantage to the litigant who remains silent at the crucial moment when the Trial Judge has concluded his charge to the jury. A contrary rule would render impotent any endeavor to correct the court’s own errors at a time when such correction is feasible and helpful. A contrary holding would unduly burden litigants and the judicial process, both trial and appellate. Accordingly the application should be and is denied.
Next, as to the motion made by the defendant Fletcher to set the verdict aside as contrary to law in that the verdict on the first cause of action against him was inconsistent with the verdict on the second cause of action in his favor. Whether that is so or not requires an examination of my charge, and I therefore note here, somewhat fully, what it was that I charged the jury with respect to the two causes of action, particularly as to their interdependence and independence.
*426 In substance, I charged as follows as to the first cause of action for fraud and deceit, which, in view of the plaintiff’s discontinuance as to Sook, was directed only as against Fletcher: ‘ ‘ In order for the plaintiff to recover a verdict in his favor, the plaintiff must prove, that is, he has the burden of proof of, the following five propositions, and each of them: 1. That the defendant Fletcher made the representations to the plaintiff that plaintiff claims, and that is that the deed would be made out to the defendant Sook, as grantee, and transferred only to the defendant Sook upon the payment and delivery of the sum of $12,000; 2. The plaintiff also must prove that those representations as made by Fletcher were false; 3. That the defendant knew when he made them that the representations were false and that they were made with intent to deceive the plaintiff into giving Fletcher this deed in blank; 4. That the plaintiff believed and relied upon the defendant’s representations; and 5. That the plaintiff was damaged thereby.”
As to the second cause, which (in the then posture of the case) was against defendants Fletcher and Moy, the pertinent portions of my charge were as follows:
“ Now let us consider his [the plaintiff’s] second cause of action which, as I have already told you, is for conspiracy, and at the present time this second cause of action is against the defendants James L. Fletcher and Elsie Moy. By this cause of action the plaintiff alleges that Fletcher and Moy conspired and combined together to acquire title and control of the plaintiff’s real estate and laundry business in Long Island, and that, as a result of that conspiracy — bearing in mind all the plaintiff’s claim on the first cause of action as to fraud and deceit, which claim is realleged in the plaintiff’s cause of action for conspiracy — that what Fletcher did was, according to the plaintiff, to insert Fletcher’s name, get the keys of the building from [the plaintiff] Ming Hin Chin, and turn the keys over to Moy, when, as a m'atter of fact, what was to be done was to turn all of that over to Sook in return for $12,000.
* * *
“ Now, under our law, the burden in this case is placed upon the plaintiff to prove his claims. And that is to say he must prove his case, insofar as the first cause of action is concerned, against Fletcher; and insofar as his second cause of action is concerned, against Fletcher and Moy.
‘ ‘ I want to point out to you that you should take up each cause of action separately. It may be that you may find that the plaintiff is entitled to a verdict on the first cause of action *427 as to fraud and deceit, and not on the second cause of action as to conspiracy. It may be that you may determine that the plaintiff is not entitled to recover on either cause of action. But I want you to bear in mind that you cannot find in favor of Fletcher on the first cause of action for fraud and deceit and in favor of the plaintiff on the second cause of action for conspiracy, because the conspiracy claimed by the plaintiff in the second cause of action, as I said earlier, is grounded on the reallegation of all of the claims made by the plaintiff in his first cause of action. In other words, once you find that the plaintiff has failed to make out a cause of action for fraud and deceit, then you must find in favor of both defendants on both causes of action. And I will explain that to you shortly.
# * *
“ Now, with respect to the second cause of action — for conspiracy. The law is that when two or more persons conspire together to commit an actionable wrong, it is a conspiracy, and everything that is done by any of them in the furtherance of their common purpose is deemed to be done by each of them, and each of them is responsible for the consequences, provided, of course, you find, and the plaintiff has the burden of proving, that there was this conspiracy or combination between Fletcher and Moy.
“ The gravamen of the action for conspiracy is the injurious wrongful act committed by those charged with the conspiracy. * * * Now, there is no actionable wrong or conspiracy to do an act which is lawful. As you may be aware, it is the defendants’ contention that the plaintiff lost his building and his laundry only because he failed to make the necessary payments on the various mortgages on the real estate and on the chattel mortgages, the conditional bills of sale, and other indebtednesses, and that his creditors foreclosed. If you find that the plaintiff lost his building and his laundry solely as the result of the lawful acts taken by his creditors or others, then the plaintiff may not recover against the defendants on this cause of action for conspiracy.
“ There can be no conspiracy unless there is a wrongful or illegal purpose, and unless in this case you find that the plaintiff has succeeded in his first cause of action for fraud and deceit against Fletcher, then there can be no recovery on the second cause of action against Fletcher and Moy, and that is why some moments ago I said that if you find against the plaintiff on his first cause of action, you must find against the plaintiff on the second cause of action; or, to put it differently, before you can find in favor of the plaintiff and against the defendants *428 Fletcher and Moy on the second cause of action for conspiracy, you must find in favor of the plaintiff and against the defendant Fletcher on the first cause of action based upon fraud and deceit. Also, you must find that defendant Moy and the defendant Fletcher conspired with each other in order to find for the plaintiff on this cause of action, and you must find that Moy and Fletcher conspired with a view to the furtherance of the common design to defraud the plaintiff of his building and laundry. ”
I doubt if anything more need be said on this issue. For, quite plainly, the charge to the jury differentiated the liability, if any, which might be imposed on Fletcher alone for fraud, from that to which he might be subject if the jury found him guilty of fraud and also that he had acted in concert with others. It is clear that the jury, following the charge on the law, may well have determined that the defendant Moy was in no way guilty of any conspiracy with Fletcher, but that the defendant Fletcher was guilty of fraud and deceit in respect of the plaintiff, and that was the reason why the jury brought in the verdict which it did — for the plaintiff on the first cause, and against him on the second. There is no inconsistency whatsoever in the jury’s verdict and the effort by the defendant Fletcher to upset the verdict on this ground must fail.
One of the other grounds now presented by the defendant Fletcher to nullify the verdict was the submission of the case to the jury on the basis of an allegedly erroneous measure of damages. I, therefore, deem it helpful at this point to record the substance of my charge to the jury on the matter of damages:
1 ‘ According to the plaintiff, there was an agreement between him and Sook whereby Sook was to buy the property and the business for $16,000, subject to certain obligations, encumbrances, outstanding bills, and the like. If you believe that that was the sum and substance of the agreement, and if you believe that the plaintiff should prevail in this case, then the damages that the plaintiff sustained would be the sum of $12,000, which represents the balance he was to receive under the agreement as alleged by him.
“ Before you can arrive at that conclusion, you must find that there was such an agreement between Sook and Chin, and you must find that there was fraud and deceit on the part of Fletcher with respect to the first cause of action, and fraud and deceit on the part of Fletcher in respect of the second cause of action and conspiracy with Moy, so far as the second cause of action is concerned.
*429 “I charge you that you cannot compromise this case in respect of the damages which the plaintiff is entitled to recover, if he is entitled to recover any damages at all. His cause of action is grounded solely upon the proposition that whatever equity he, Ming Hin Chin, had in the property, Chin Kong So ok agreed to pay $12,000 for; and that Sook did not pay the $12,000 because Fletcher, according to the plaintiff, took the deed in the property for himself.
“ Either the plaintiff is entitled to recover $12,000, if the plaintiff is entitled to recover at all, or the plaintiff is entitled to recover nothing.”
As I have heretofore noted, no objection was made by the defendant Fletcher to this charge in any respect — either by way of exception to it as given or to my refusal to charge as requested. In such circumstances, the law as expounded by the court to the jury is the law of the case (Imbrey v. Prudential Ins. Co., 286 N. Y. 434, 440; Leonard v. Home Owners’ Loan Corp., 297 N. Y. 103; Swensson v. New York, Albany Desp. Co., 309 N. Y. 497, 501) binding upon the parties (Grace v. Dry Hock Sav. Bank, 3 A D 2d 556, 557), and even though it be an erroneous statement of the law (Brown v. Du Frey, 1 N Y 2d 190,195; Buckin v. Long Island R. R. Co., 286 N. Y. 146,149), the moving party cannot now complain on that score (Hanlon v. Macfadden Pubs., 302 N. Y. 502, 511).
Nor does it aid the defendant Fletcher that he moved to set the verdict aside as being contrary to the law. The term ‘ ‘ contrary to law ’ ’, as found in section 549 of the Civil Practice Act, “ does not apply to an error of the court in giving the jury the instructions upon which their verdict is to be based. It has reference to a verdict which the law as charged by the Judge does not authorize the jury to render upon the evidence presented to them. (See 7 Carmody-Wait on New York Practice, § 24 [pp. 125-127].) The act of the Judge in erroneously charging the jury upon the law in the case, although it necessarily results in a verdict not authorized by law, is not an error for which the jury is responsible, but is an error of the Judge, to be pointed out by an exception and if a party fails to take an exception he cannot raise the question upon a motion for a new trial.” (Brown v. Du Frey, 1 N Y 2d 190, 196).
I think that I should add that, on reflection, it is still my view that the charge as to damages was a correct exposition of the applicable law, and, therefore, that — even were due exception taken to the charge and even were the attack upon the propriety of the charge or the appropriateness of the verdict not untimely — I should overrule the movant’s objection and deny his motion. This addendum on my part perhaps necessitates an analysis of the governing law as I see it.
*430 The defendant Fletcher argues that, since the correct measure of damages in cases of misrepresentation is the difference between the price paid and the actual value, the court erred in limiting the ambit of the jury’s consideration and verdict to “ $12,000' or nothing ” (thereby relying upon the sales price of the plaintiff’s equity as the sole evidence of damage), and that, since the property in question was not worth the sum for which it was sold, the recovery of $12,000 was disproportionate to the true value of the property.
There is, of course, ample authority in this State for the oft-quoted principle that, where a party is induced to purchase by misrepresentation, the amount of damages which he is entitled to recover is the difference between price paid and actual value, not the difference between the price paid and the promised, or misrepresented, value (Reno v. Bull, 226 N. Y. 546; Hanlon v. Macfadden Pubs., 302 N. Y. 502, 511, supra; Restatement, Torts, § 549). And it is the line of authority of which Reno v. Bull is the leading case that the movant relies upon heavily. But, in my view, this rule, properly understood, is of no aid to the moving defendant. This precept is applicable, for example, where the seller, by way of deliberate exaggeration, misrepresents to the buyer the value of the thing purchased, and the buyer sues the seller to recover damages for the fraud thus perpetrated. In such case, Reno v. Bull (supra) generally limits the buyer’s recovery to his actual loss and, except in special circumstances, does not permit recovery for his prospective gain.
But the present is not a case of this sort, and thus the precedents relied upon by the defendant Fletcher are inapplicable here (Bower v. Palmer, 281 N. Y. 341; cf. Sager v. Friedman, 270 N. Y. 472; Oxenfeldt v. Yonofsky, 276 App. Div. 374). In the instant ease, there was no negotiation between the parties here involved — Chin and Fletcher — as to the value of the land, building, or business. That was not the subject matter of any agreement between Chin and Fletcher. That was not the basis of any misrepresentation claimed by Chin to have been made by Fletcher. The false representation that Fletcher was alleged and proved to have made was that he would faithfully act as escrowee — that is, deliver the deed to the buyer, Sook, in return for $12,000, to be received by Fletcher and to be paid over by him to Chin. Fletcher’s fraud made it impossible for Chin to perform his contract with Sook, and this fact led to Chin’s loss of the sum which Sook had agreed to pay to Chin — that is, the sum of $12,000.
*431 I recognize, of course, that “ [a] party must recover not only according to his proofs hut according to his pleadings ’ ’ (Walrath v. Hanover Fire Ins. Co., 216 N. Y. 220, 225; Rosner v. United States Waterways Corp., 278 App. Div. 168,. 170, affd. 304 N. Y. 580). It is interesting, nevertheless, to note that, on the facts as they were unfolded at the trial, the plaintiff’s cause of action against Fletcher could have heen grounded upon a number of legal theories, and that, on any of them, the damages to which the plaintiff would have been entitled would have been no less.
For example, the defendant Fletcher could have been held liable in conversion. “ A deed is property which may be the subject of conversion, for which an action therefor will lie.” (44 A. L. R. 2d 943 and cases cited therein, including Towle v. Lovet, 6 Mass. 394 and Roberts v. Wyatt, 2 Taunt. 268, 127 Eng. Rep. 1080.) The deception involved here in getting control of the document does not take this case out of the area of conversion, although the plaintiff voluntarily gave the deed to Fletcher (Harper and James, Law of Torts, § 2.16.) In Powell v. Powell, (71 N. Y. 71) defendant obtained a promissory note from plaintiff by agreeing- to apply it to a sale, then destroyed the note and repudiated the obligation. That was held to be a conversion (see Baker v. Moore, 4 App. Div. 234, 237, 238). In Traeger v. Sperberg (256 Wis. 330, 333) the court held that, “ when a party has contracted to sell a chattel but is prevented from doing so by the conversion of another, he is entitled to the amount he would have received under the agreement.” (See, also, 4 Sutherland, Damages [4th ed.], § 1117.)
This principle was upheld in the interesting case of France v. Gaudet (Law Rep. 6 Q. B. 199 [1871]). There, plaintiff purchased from defendants 100 cases of champagne, which he resold to a ship captain about to leave England. Defendants refused to deliver the wine as agreed, and plaintiff could not fulfill his contract with the captain. It was held that plaintiff was entitled to recover the contract price. For the Court of Queen’s Bench, Mellor, J., wrote (p. 204): “We are of opinion that the true rule is to ascertain the actual value of the goods at the time of the conversion, and that a bona fide sale having been made to a solvent customer at 24s. per dozen, which would have been realised had the plaintiff been able to obtain delivery from the defendants, the champagne had, owing to these circumstances, acquired an actual value of 24s. per dozen; and we think that, in the present case, that ought to be the measure applied * * * .” In France v. Gaudet (supra), *432 defendants claimed to be unaware of the higher value of the goods; but, in the case at bar, the defendant Fletcher ex hypothesi knew the price for which the.property was sold by the plaintiff to Sook. This fact would, of course, strengthen the case here for recovery of the agreed purchase price.
Also, the defendant Fletcher’s act in wrongfully filling in his own name on the deed and proceeding to exercise dominion over the property might have been held an unlawful act (see Penal Law, §§ 881, 932). It certainly was an intentional, malicious interference with the plaintiff’s advantageous contractual relationship with Sook (see Lumley v. Gye 2 E. & B. 216).* When the defendant Fletcher prevented the performance by the plaintiff of his contract to sell, the result was that Sook was relieved of his obligation to pay. Thus was the plaintiff deprived of the benefit of his bargain. The measure of damages would be the contract price, which was, to Chin, the value of that bargain. (Cf. Harper and James, Law of Torts, §§ 6.5-6.9.)
Similarly, where properly pleaded, damages for loss of profits have been awarded in actions for negligence (Steitz v. Gifford, 280 N. Y. 15). The intentional tort of deceit would seem to present an a fortiori case for allowing such a recovery. In Foster v. De Paolo (188 N. Y. S. 746) lost profits were held compensable in an action involving fraud in the inception of a contract. In that case the profits were lost, as here, because defendant’s fraud made it impossible for plaintiff to perform a collateral contract. The complaint was upheld, and the loss of profits allowed as a proper element of special damage, with cautionary language that such loss must be pleaded.
Notwithstanding the defendant’s intimation, if not argument, to the contrary, loss of profits may be a proper subject of recovery even in an action for breach of contract. The rule is thus stated by Williston on Contracts (2d ed., vol. 4, § 1345): “ * * * Profits that the plaintiff would have made if the contract had been carried out may be recovered if their loss was a proximate and natural consequence of the breach * * * .” (See, also, Restatement, Contracts, §§ 330, 331.) All that is required is that such loss be adequately pleaded in the complaint (Parsons v. Sutton, 66 N. Y. 92, 96).
Thus, whether one follows the “out-of-pocket” or the “ benefit-of-the-bargain ” or the “special-circumstances” theory of damages (see 24 Am. Jur., Fraud and Deceit, §§ 227-228; 124 A. L. R. 38, 62-63; Hotaling v. A. B. Leach $ Co., *433 247 N. Y. 84), the measure of damages in the instant case would he the same. The ‘1 out-of-pocket ’ ’ loss to the plaintiff was $12,000, the additional sum that Sook would have paid had he received the property from the plaintiff, but did not. If what the defendant Fletcher said he would do with the deed, and did not, were made the truth at Fletcher’s expense, he would be required to fulfill his agreement and effectuate a transfer of the property to Sook, in which case the plaintiff would be paid the $12,000 balance due him by Sook —thus reaping the “benefit of the bargain” he had made. And the whole picture is presented in the pleadings as showing ‘‘ special circumstances ’ ’ justifying and requiring that Fletcher make the plaintiff whole.
But the defendant Fletcher also attacks the damages allowed on the ground that the plaintiff did not properly plead them, and cites Walrath v. Hanover Fire Ins. Co. (216 N. Y. 220). That case is distinguishable. There plaintiff sued on an insurance policy as for breach of an executed contract, but, as pointed out by the court, the verdict was based upon the finding, under the charge of the Trial Judge, that defendant made and violated an oral agreement to insure the buildings and deliver the policy to the mortgagee, whereas the complaint did not state facts constituting, or, if proved, establishing such an agreement (p. 224). On the other hand, in the case at bar, the facts, found by the jury in accordance with my charge, were not at all different from those stated in the pleading.
In Walrath, the court went on to say: “ The language must state those facts with a certainty and completeness sufficient, under the rule o f construction already stated, to give the defendant fair and reasonable information of the particular acts constituting the wrong done the plaintiff by him, so as to enable him to plead and prepare his defense, and the court to properly control and guide the trial of the action.” (216 N. Y. 225.) In the instant case this was done, and there is no requirement set forth in the cited precedents that such claim be expressly labelled “ Special Damages ”. In Ms complaint, the plaintiff alleged that Sook agreed to buy the plaintiff’s realty and laundry for $16,000 (par. 4); that Sook paid $4,000 on account, leaving a balance of $12,000 (par. 5); and “that such property so conveyed to the defendants was of the value of Sixteen Thousand ($16,000) Dollars, and that by reason of such conveyance thereof to the defendants, plaintiff was damaged in the sum of Sixteen Thousand ($16,000) Dollars, less the sum of Four Thousand ($4,000) Dollars received on account ” (par. 14). And in paragraph 9 of his bill of particulars the *434 plaintiff states that he ‘ ‘ will claim that the value and equity of his laundry and property was the sum of $12,000, which was the agreed amount and value and balance due for the property and laundry that defendant, Chin Kong Sook, was to pay to plaintiff for same ’ ’, and in paragraph 10, the plaintiff alleges that he “ demanded from all of the defendants the return of his property and laundry or the value thereof, which was the sum of $12,000.00 ” — obviously in view of the $4,000 which Sook had paid on account.
In few, the plaintiff’s loss of $12,000 was the expected result of the defendant Fletcher’s deceit; that was the special damage which the plaintiff pleaded and proved; that was the true measure of the plaintiff’s right to recover. “ Special damages naturally and proximately resulting from the fraud may be recovered. * * * Loss of profits on collateral contract, if
the proximate result of the fraud and reasonably within the contemplation of the parties, has been held recoverable.” (Clark, New York Law of Damages, § 422.) The recoverable damage in the case at bar, therefore, was the value of the property as determined by the price for which it was sold.
It is also urged by the defendant Fletcher that the Chin-Sook transaction of sale and purchase — being oral — was unenforcible by Chin and that Chin’s loss because of Sook’s nonperformance thereof was therefore not recoverable from Fletcher. Assuming that the payment, the receipt, the advertisements, the execution of the deed, and the other indicia of the agreement were insufficient to remove the bar of the Statute of Frauds, if pleaded in a suit between the contracting parties, the argument is nevertheless not persuasive as affecting the liability incurred by the outsider as a result of his fraudulent conduct. The movant urges that, in order ‘ ‘ to hold a defendant for defrauding him out of a contract, plaintiff must prove that the contract was valid and enforceable ” (citing Urtz v. New York Cent. & H. R. R. R. Co., 202 N. Y. 170). The case is, plainly, not in point, and it is my view that the special damage to which the defrauder is subject need not be based on the binding quality of the agreement giving rise to that damage. The Statute of Frauds, upon which the defendant Fletcher relies to exculpate him in the case at bar, is a plea personal to the contracting parties and their successors in interest (Stitt v. Ward, 142 App. Div. 626, 630). The statute may correctly be termed a shield against fraud. But it should not be permitted by a stranger to the agreement to be turned into a weapon to enable him to perpetrate a fraud upon the parties to the agreement. Sufficient it is, in the case at bar, that the jury were *435 instructed (without objection or exception) that, before they might render a verdict for the plaintiff, they must find that there was in fact the agreement between him and Sook which the plaintiff pleaded and upon which he relied.
Now, as to the motion by the plaintiff for a directed verdict to recover over against the defendant Fletcher the sum of $4,000, which sum the defendant Sook recovered against the plaintiff as a result of the verdict which I had directed against the plaintiff in favor of the defendant Sook. It will be recalled that, in his answer to the complaint, the defendant Sook interposed a counterclaim in which he alleged that he had entered into an agreement with the plaintiff pursuant to which the plaintiff was to sell to him his realty and laundry for $16,000 and that in accordance with this agreement he paid to the plaintiff the sum of $4,000 on account. In the plaintiff’s reply to this counterclaim, the plaintiff alleged, among other things, that “ if defendant, Chin Kong Sook, recovers judgment for any amount against this plaintiff, then the defendants, James L. Fletcher, Elsie Moy and Tsoy Wei Laing, above named, are or may be liable over to this plaintiff wholly or in part for the amount of any recovery that may be obtained by this defendant; Chin Kong Sook, against the plaintiff,” and demanded that, if the defendant Sook recovers judgment against the plaintiff, then the plaintiff recover judgment over against the defendants Fletcher, Moy and Laing, for any sum that may be recovered against him by the defendant Sook (Civ. Prac. Act, § 264). It will also be recalled that, in my charge to the jury on the matter of damages, I informed them, among other things, that, according to the plaintiff, there was an agreement between him and Sook whereby Sook was to buy the property and the business for $16,000, that the plaintiff had received $4,000 on account from Sook, and that the plaintiff’s action is grounded solely upon the proposition that for whatever equity he, the plaintiff, had in the property, Sook agreed to pay the balance of $12,000, that Sook did not pay that $12,000 balance because Fletcher, according to the plaintiff, took the deed in the property for himself; and I instructed the jury that, if the plaintiff proved the fraud and deceit as alleged by him, they should find for the plaintiff in the sum of $12,000, the balance unpaid. The jury having brought in a verdict in favor of the plaintiff against the defendant Fletcher, it would follow necessarily that the jury determined that the defendant Fletcher had defrauded the plaintiff, and that, in order to make the plaintiff whole, I should now grant the plain *436 tiff’s motion for judgment over as against the defendant Fletcher in the sum of $4,000 — unless there be some legal impediment to that procedure.
It is urged by the defendant Fletcher that, the jury having been dismissed, there is no power in the court to direct a verdict on the claim over. It is important to note that, when the defendant Sook moved for a directed verdict against the plaintiff on his counterclaim and the motion was granted (before the dismissal of the jury), no objection was made by any party; that, while there was no formal stipulation on the record that the question of recovery over by the plaintiff would not be submitted to the jury, but would be left to the court’s determination, the court’s charge to the jury was completely silent with respect to this phase of the litigation, and no party excepted to the failure so to charge or requested any instructions to the jury concerning the plaintiff’s claim with respect to his right to judgment over against the defendants, or any of them; and that, when, in the presence of the jury, the court reserved decision on the motion by the plaintiff for such recovery over, no objection was interposed or exception recorded by any party.* Extended research on this matter of trial procedure has resulted in unearthing no precedent of value. (Cf. Civ. Prac. Act, § 457-a, subd. 3.) I must therefore undertake to resolve this issue on my own. And I state at once that I am not impressed with the defendant’s contention that the dismissal of the jury, in the circumstances of this case, renders the Trial Judge functus officio. To view the situation otherwise would, it seems plain to me, exalt form above substance where form is not a concomitant of due process, and where the trend of trial practice is in the other direction. The routine procedure (still current in some quarters) of requiring the Clerk of the court to instruct the foreman of the jury to return a verdict in accordance with the court’s decision on a motion for a directed verdict seems to me entirely archaic, anachronistic and useless. What if the court directed a verdict, and the jury refused so to find? Would the result be a valid directed verdict nonetheless? I *437 think so. Without doubt the jury should be present upon the direction of a verdict if, as a consequence thereof, further substantive action by the jury may properly be asked for by one party or the other. Where, however, the jury’s acquiescence in a directed verdict is merely formalistic and mechanical, and where a party’s legal rights on the basis of such direction may adequately be presented for adjudication to the court in the absence of the jury, their presence at the time of direction is, in my view, immaterial. Moreover, in the circumstances of this case, I deem it a fair and just implication that all of the parties consented that the matter of the recovery over under the pleadings was to be left to the determination of the court after the jury had rendered their verdict on the other facets of the controversy. Accordingly, the plaintiff’s motion for recovery over against the defendant Fletcher for the sum of $4,000 is granted.
As to costs, the applications of the several successful parties for additional allowances were denied at the trial (Civ. Prac. Act, § 1513). The motions for normal costs are granted in accordance with statute. (Civ. Prac. Act, § 1476.)
Judgment may be entered in accordance herewith upon due notice to the respective parties, and the Clerk is directed to proceed accordingly. The requests for 30 days’ stay and 60 days to make a case are granted.

 To avoid likely confusion, I have, throughout this opinion, referred to the respective parties by their last names as indicated in the title of the action, rather than by their first names as therein specified, notwithstanding that, according to Chinese usage, such first name may in fact be the party’s family name.

 An exposition of the increased scope that American courts have given to this action was written by Judge Learned Hand in Sidney Blumenthal & Co. v. United States (30 F. 2d 247, 248-249).

 After the charge-in-chief, and in the presence of the jury, the following occurred:
“ Mr. Nearing [Counsel for defendant Sook]: I request your Honor to direct the jury to bring in a verdict as granted in the sum of $4000 on the counterclaim by the defendant Chin Kong Sook against the plaintiff.
“ The Court: I so direct.
“ Mr. Strauss [Counsel for plaintiff]: In that event, your Honor, I ask you to charge the jury that plaintiff counterclaims over against the defendants.
“ The Court: That will be left for the Court to determine on the coming in of the jury’s verdict.”