ROBERT C. LIPSIT, PLAINTIFF-APPELLANT, v. JACKSON D. LEONARD, INDIVIDUALLY; JACKSON D. LEONARD, t/a JACK D. LEONARD AND ASSOCIATES; JACK D. LEONARD, t/a THE LEONARD PROCESS COMPANY; AND JACK D. LEONARD, t/a J. D. LEONARD AND ASSOCIATES, AND THE LEONARD PROCESS CO., INC., DEFENDANTS-RESPONDENTS.

Argued September 26, 1973—Decided February 5, 1974.

*Mr. Walter L. Leib* argued the cause for plaintiff-appellant (*Messrs. Read, Leib, Shear and Kraus,* attorneys).

*Mr. William J. O'Shaughnessy* argued the cause for defendants-respondents (*Messrs. Clapp & Eisenberg,* attorneys).

PER CURIAM. This case derives from an employment relationship from September 1961 to January 1969 between plaintiff as employee and defendants as employer. (The individual defendant Leonard, as sole proprietor of a New York business, was the employer between 1961 and the end of 1967, at which time the business was incorporated in New York, the individual defendant owning all the stock, and the corporate defendant became the employer.) The employment arrangement consisted of a series of annual letter agreements.

Plaintiff's claim is that these agreements were accompanied by specific oral promises of the individual defendant, first made to induce him to leave his former employment and enter into the first agreement and renewed thereafter as an inducement to continue his employment, that he would be given an equity interest in the business in consideration of past and future services. The written agreements go no further than to say, in the language of the most explicit of them (covering the year 1964), that "it is understood and agreed that if the relationship between Lipsit and Leonard is mutually satisfactory, a more permanent relationship involving partial ownership, profit sharing, or other incentive plan shall be developed, on a mutually acceptable basis, and put into effect at the end of this contract (Dec. 31, 1964) or sooner; if deemed desirable to do so." Nothing was done by the employer to further this expression of intent until 1968 when a proposal was made to plaintiff which, after some negotiation, he found unacceptable as fiscally impossible from

his standpoint. His services were thereafter terminated at the beginning of 1969.

Plaintiff's theories of action, presumably in the alternative although not so stated, are that there resulted a breach of contract based on the oral promises giving rise to a cause of action therefor, as well as a tort claim based on fraud. The latter is spelled out in the complaint in this fashion: "* * * it is clear that Defendant's design from the beginning was to misrepresent and fraudulently obtain the services of Plaintiff through promises of equity and ownership and then attempted to give Plaintiff the equity ownership under a situation that made it impossible for Plaintiff to accept same." In other words, the fraud charge is that Mr. Leonard never intended to keep the oral promises at the time he made them, which amounted to a misrepresentation of an existing fact, and therefore there was fraud in the inducement to enter into the several employment agreements.

■■ The rather inartistic complaint, filed in the Law Division, consists principally, in a single count, of a long rambling narrative statement of the course of dealing and events between the parties, followed by 10 confusing prayers for judgment. The latter, as refined by the pretrial order, seeks relief on both contract and tort theories. For breach of contract, money damages are sought to the amount of 10% of the assets of the business to be valued by an independent appraiser plus "further reasonable damages for Defendant's arbitrary breach of agreement in failing to give Plaintiff what Defendant had agreed to do." In tort, "reasonable damages" are asked "for the fraud and misrepresentations of the Defendant." Punitive as well as compensatory damages are asked for. In addition, several miscellaneous prayers for relief were listed, including unpaid back salary for overtime and vacations earned in 1968, salary for 1969 on the basis that plaintiff was wrongfully discharged, and "reasonable damages for malicious interference in the pro-

spective business interests of Plaintiff in an amount of $1,000,000."[1]

Defendants moved for summary judgment upon the entire complaint, expressly relying only upon the pleadings, other documents on file, and depositions taken of plaintiff and not submitting any affidavits or other proofs in their own behalf. This meant that they, although denying any oral ·promises in the answers, took the position that, assuming for purposes of the motion that everything plaintiff alleged and asserted was true and that therefore there was no issue as to any material fact, *R.* 4:46–2, they were entitled to judgment as a matter of law.

Both sides correctly agreed that New York substantive law governed the case, both on the contract and tort theories. The employment agreements related to a New York business, they, as well as the alleged oral promises, were made and to be performed there and that state certainly was the "center of gravity" of the matter. The suit happened to be brought in New Jersey because both plaintiff and the individual defendant resided here at the time of institution. This state has no other possible interest. Apparently no motion was made for the application of the *forum non conveniens* doctrine. The courts of this state are thus put in the difficult and unsatisfactory position of trying to determine the law of New York, when if the suit had been brought in that state, as it could have been, it would have been determined by judges experienced in its law.

The Law Division judge granted defendants' motion, resulting in a dismissal of the entire complaint, in a thorough

---

[1]Such specific monetary demand for unliquidated damages is a flagrant violation of *R.* 4:5–2, which requires that such damages shall be demanded "generally without specifying the amount."

Considering the complaint as a whole, good practice, as indicated by the spirit of *R.* 4:5–2 and 1:4–2, dictates that the various claims should have been set up in separate counts to facilitate clear presentation and adequate notice to defendants of the claims and alleged bases therefor.

letter opinion,[2] which judgment the Appellate Division affirmed in an unreported *per curiam* for the reasons expressed below. We granted plaintiff's petition for certification. 63 *N. J.* 424 (1973).

The trial court, relying on New York law throughout, was so clearly correct in giving judgment for defendants on the contract cause of action and the miscellaneous claims that any extended discussion is not required. It held in effect that the previously referred to language of intent in the various employment agreements with respect to an equity interest in the business did not reach the level of a contract and constituted at best only an unenforceable agreement to consider and negotiate. It further held that the alleged oral promises were inadmissible under the parol evidence rule (actually a rule of substantive law in the present context) and so that plaintiff could not establish any contract or breach thereof based thereon. It additionally found that there was no lawful claim for unpaid compensation for 1968, that, with reference to salary for 1969, there was no illegal termination of employment at the beginning of that year, and that no facts were to be found anywhere in the motion record to establish a claim for malicious interference with plaintiff's prospective business interests.

As to the tort cause of action in fraud, the trial judge found it also to be barred under New York law by the parol evidence rule, for the expressed reason that otherwise the rule would be emasculated by simply sounding an action in fraud, when recovery could not be had in a breach of contract action on the same facts in which the rule would prevent the

---

[2]Plaintiff, who had submitted no contrary affidavits or other proofs in opposition to the motion, moved for rehearing after the motion was granted and at that time filed an affidavit and exhibits. The trial judge, after reviewing the additional materials, denied the motion to rehear. We are satisfied that, consistent with his original opinion, he was right in so doing, but, to give plaintiff every benefit, we have considered all these further documents as if they had been before the judge at the time of his original decision.

admission in evidence of the necessary oral proofs to establish the contract sought to be enforced. The trial court erred here, perhaps because there was apparently not presented to it the New York rule on the available relief and proper measure of damages in an action grounded upon fraud in the inducement for a contract.

█ Initially, it is to be noted that the rule is well established that, as Dean Prosser puts it:

> A promise, which carries an implied representation that there is a present intention to carry it out, is recognized everywhere as a proper basis for reliance; * * *. All but a few courts regard a misstatement of a present intention as a misrepresentation of a material fact; and a promise without the intent to perform it is held to be a sufficient basis for an action of deceit or for restitution or other equitable relief.

Prosser, *Torts* (4th ed. 1971) § 109, pp. 728–729. There is no doubt that New York recognizes such a basis for a cause of action in fraud. *Sabo v. Delman,* 3 *N. Y. 2d* 155, 164 *N. Y. S. 2d* 714, 143 *N. E. 2d* 906 (1957); *Adams v. Gillig,* 199 *N. Y.* 314, 92 *N. E.* 670 (1910).[3]

█ The question is, of course, whether the action can be maintained when the promise itself cannot be enforced, "as where it is without consideration, is illegal, is barred by the statute of frauds, or the statute of limitations, or [as here] falls within the parol evidence rule, or a disclaimer of representations." *Prosser, supra,* pp. 729–730. As to the effect of the parol evidence rule, New York allows such an action to be maintained and parol evidence to be introduced where the relief sought is rescission or restitution, *i. e.,* repudiation or avoidance of the contract as distinct from affirmation and enforcement of it. *Adams v. Gillig, supra; Sabo v. Delman, supra.* New York also allows reformation of a written contract to include oral promises and enforcement

---

[3] The law in New Jersey is to the same effect. See *e. g., Ocean Cape Hotel Corp. v. Masefield Corp.,* 63 *N. J. Super.* 369 (App. Div. 1960).

thereof, with parol evidence permitted to establish the claim, on the basis of mutual mistake or unilateral mistake by the promisee coupled with fraud on the part of the promisor which resulted in the exclusion of the oral promise from the written contract. *Brandwein v. Provident Mutual Life Insurance Co. of Philadelphia,* 3 *N. Y.* 2d 491, 168 N. Y. S. 2d 964, 146 *N. E.* 2d 693 (1957); *Barash v. Pennsylvania Terminal Real Estate Corp.,* 26 *N. Y.* 2d 77, 308 N. Y. S. 2d 649, 256 *N. E.* 2d 707 (1970). (There is no basis in the record in this case for any claim of such mistake by plaintiff.)

■■ More pertinent to the instant case, New York clearly further allows, in line with the majority of states, an action in tort for money damages, as distinct from one grounded in breach of contract, based upon oral fraudulent promises and misrepresentations which induced the written agreement and permits parol evidence to establish the same. The parol evidence rule is no bar. See *e. g., Crowell-Collier Publishing Co. v. Josefowitz,* 5 *N. Y.* 2d 998, 184 N. Y. S. 2d 859, 157 *N. E.* 2d 730 (1959); *Danann Realty Corp. v. Harris,* 5 *N. Y.* 2d 317, 184 N. Y. S. 2d 599, 157 *N. E.* 2d 597 (1959); *Hanlon v. Macfadden Publications, Inc.,* 302 *N. Y.* 502, 99 *N. E.* 2d 546 (1951); *Goldsmith v. National Container Corp.,* 287 *N. Y.* 438, 40 *N. E.* 2d 242 (1942); *Mills Studios, Inc. v. Chenango Valley Realty Corp.,* 15 *A. D.* 2d 138, 221 *N. Y. S.* 2d 684 (App. Div. 1961); *Rosenwald v. Goldfein,* 3 *A. D.* 2d 206, 159 *N. Y. S.* 2d 333 (App. Div. 1957); *Plum Tree, Inc. v. N. K. Winston Corp.,* 351 *F. Supp.* 80 (S. D. N. Y. 1972). *Cf. Channel Master Corp. v. Aluminum Limited Sales, Inc.,* 4 *N. Y.* 2d 403, 176 N. Y. S. 2d 259, 151 *N. E.* 2d 833 (1958).

■■ But New York has long adhered to the view that in actions for money damages for fraud in the inducement, the measure of damages is indemnity for the actual pecuniary loss sustained as a direct result of the wrong — the "out of pocket" rule —, as distinct from the "loss or benefit of

the bargain" rule employed by many jurisdictions[4] in the same situation which is akin to the measure allowed if the action were for breach of the contract. In other words, the contract, with the addition of the oral promises or representations, cannot be enforced in a tort action in fraud for money damages. For a full discussion of the two rules, see *Prosser, supra,* § 110, pp. 733–736. The leading New York case is *Reno v. Bull,* 226 *N. Y.* 546, 124 *N. E.* 144 (1919). To the same effect, see *Hanlon v. Macfadden Publications, Inc., supra* (99 *N. E. 2d* 546) ; *Mills Studios, Inc. v. Chenango Valley Realty Corp., supra* (221 *N. Y. S. 2d* 684) ; *Rosenwald v. Goldfein, supra* (159 *N. Y. S. 2d* 333).

*Hanlon* is particularly analogous to the situation at bar. There plaintiff employee was induced to accept a lower rate of compensation (commissions) for his services on the basis of fraudulent representations made by the defendant employer. The Court of Appeals there said:

> The measure of damages in an action for deceit is firmly established. Plaintiff is entitled to indemnity for the actual pecuniary loss sustained as a direct result of the wrong. Sager v. Friedman, supra, 270 N. Y. [472] at page 481, 1 N. E. 2d [971] at page 973; Reno v. Bull, supra, 226 N. Y. at pp. 552–553, 124 N. E. at pages 145, 146; 1 Clark, New York Law of Damages, § 421. The instant case, while unusual on its facts, clearly calls for the application of this general rule. Plaintiff, of course, was not induced to part with any tangible object such as land, chattels or money as in the typical case of deceit. Instead, he parted with personal services. He was induced to render those services for a price fraudulently lowered. In the ordinary case of deceit, the measure of damage would be "the difference between the value of the thing bought, sold or exchanged and its purchase price or the value of the thing exchanged for it". (Restatement, Torts, § 549, par. [a].) The only distinction in the present case is that the jury was required to calculate the value of plaintiff's services instead of the value of the "thing bought, sold or exchanged". The true measure of damages here is the difference between the value of plaintiff's services and the price he was actually paid for them by reason of defendant's deceit. * * * (99 *N. E. 2d* at p. 551)

---

[4]New Jersey generally follows the latter rule. See *e. g., Zeliff v. Sabatino,* 15 *N. J.* 70 (1954).

 Defendants apparently agree, in their brief and by statements of counsel at oral argument, that the above accurately represents the state of the New York law, but say that plaintiff throughout has not sought such damages but rather an amount equal to the value of 10% of the assets of the business — a measure they say would be allowable only under the benefit of the bargain rule. While this appears to be true, the fact that plaintiff may have proceeded under a mistaken view as to the proper measure of damages is not a fatal defect, *Rosenwald v. Goldfein, supra* (159 *N. Y. S.* 2d at 337), if he desires to seek a proper measure of damages. The complaint and the prayer for damages on the fraud claim are sufficiently broad to permit the proper theory to be advanced. While plaintiff may well have a difficult time not only in establishing out of pocket damages specifically enough, but also in proving sufficiently precise oral promises of equity ownership in the business, in the light of the recitals of mere expectation in the written employment agreements which he signed, he is entitled to try if he wishes. (Any trial thereon should be preceded by additional discovery, if defendants desire it, and a new pretrial conference.)

The trial court therefore should not have granted defendants summary judgment on the tort cause of action in fraud. The judgments of the Appellate Division and the Law Division are modified accordingly and the case is remanded to the Law Division for further proceedings consistent with this opinion. No costs.

*For modification and remandment*—Acting Chief Justice JACOBS and Justices HALL, SULLIVAN, PASHMAN and CLIFFORD—5.