**BRACCO DIAGNOSTICS INC., Plaintiff,**

v.

**BERGEN BRUNSWIG DRUG CO., Defendant.**

**CIVIL ACTION NO. 01–5777(MLC).**

United States District Court,
D. New Jersey.

Sept. 30, 2002.

James S. Richter, Winston & Strawn, Newark, NJ, Michael P. Roche, Winston & Strawn, Chicago, IL, Attorney for Plaintiff.

Howard D. Scher, Steven E. Bizar, Buchanan Ingersoll, Philadelphia, PA, Attorneys for Defendant.

## MEMORANDUM OPINION

COOPER, District Judge.

This matter comes before the Court on the motion of defendant to dismiss Counts I and II of plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated in this Memorandum and Order, the Court will grant the motion to dismiss.

### *BACKGROUND*

Plaintiff Bracco Diagnostics Inc. ("Bracco") develops and markets a variety of health care products, including diagnostic imaging agents and diagnostic pharmaceutical products. (Compl.¶ 6.) Defendant Bergen Brunswig Drug Co. ("Bergen") is a wholesaler of pharmaceuticals and other health care products. To distribute its products to end-users, Bracco sells its products to wholesalers, such as Bergen, which have warehouse and distribution facilities across the United States. The wholesalers then sell and distribute Bracco's products to customers, including hospitals and physicians. (Compl.¶¶ 1,2,6.) Since 1994, Bergen has been one of Bracco's wholesalers. (*Id.* ¶ 2, 6.)

The terms governing Bracco's sales to wholesalers are set forth in "Wholesale Distribution Agreements." (*Id.* ¶ 9.) In 1995, Bracco and Bergen entered into such a Wholesale Distribution Agreement. Bracco and Bergen are parties to certain other agreements that include substantially similar terms, referred to collectively in the Complaint as "Wholesale Distribution Agreements." (*Id.* ¶ 9.) The terms of the Wholesale Distribution Agreements require, among other things, that (1) Bergen purchase Bracco products exclusively from Bracco; (2) Bergen maintain accurate records of sales and returns of Bracco products; (3) Bergen report to Bracco on a monthly basis information on sales and returns of Bracco product; and (4) Bergen allow audit of its records from time to time, at Bracco's expense, by Bracco or by a public accounting firm selected by Bracco. (*Id.* ¶ 10.)

Bracco also enters into contracts with certain groups of hospitals ("contract customers"). (*Id.* ¶ 11.) Those contract customers purchase Bracco's products at a negotiated "contract price" that, in most instances, is lower than the wholesale acquisition price that wholesalers pay Bracco. (*Id.*) Under the terms of the Wholesale Distribution Agreements, Bergen sells Bracco products to contract customers at the Bracco contract price. (*Id.*) Bergen then periodically sends an electronic report to Bracco detailing sales to such contract customers and the price differential between the contract price and the higher wholesale price at which Bergen purchased the products. (*Id.* ¶¶ 11, 12.) That price

differential, which Bracco reimburses to Bergen, is known as a "chargeback." (*Id.* ¶ 11.) Bracco pays the chargeback owed Bergen either by making payments to Bergen or by crediting Bergen's account in the amount of the chargeback. (*Id.* ¶ 12.) The purpose of the chargeback is to make Bergen whole in those cases in which it sells a product to a Bracco contract customer for less than Bergen paid for the product. (*Id.* ¶ 11.) In certain circumstances, wholesalers such as Bergen are required to return the chargeback to the manufacturer. (*Id.*) Such a return or reversal of the chargeback is referred to as a "negative chargeback." (*Id.*)

According to the Complaint, Bergen began using the chargeback system in a "scheme to cheat" Bracco, involving two types of transactions. (*Id.* ¶ 14.) Bracco alleges that in the first type of transaction, Bergen failed to submit a negative chargeback when required and thus kept many unearned chargebacks. (*Id.* ¶ 15.) Bergen often would re-sell the returned product and submit a report to Bracco claiming a second reimbursement for the same item while failing to disclose that it (Bergen) had already received reimbursement. (*Id.*) That "double dipping" would result in Bergen obtaining two chargeback reimbursements for the same product. (*Id.*) Bracco alleges that in the second type of transaction, Bergen purchased Bracco products from sources other than Bracco in violation of the Wholesale Distribution Agreements. (*Id.* ¶ 16.) According to the Complaint, Bergen then sold such "secondary source" goods to contract customers, and Bracco subsequently paid chargebacks to Bergen on those sales. (*Id.*)

Bracco filed a six-count Complaint on December 12, 2001. In addition to claims for breach of contract, Bracco asserts claims for common-law fraud (Count I) and violation of the New Jersey Consumer Fraud Act (Count II). Bergen now moves for dismissal of the fraud and statutory claims contained in Counts I and II of the Complaint pursuant to Rule 12(b)(6).

## DISCUSSION

### I. Standard Under Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted does not attack the merits of the case, but merely tests the legal sufficiency of the complaint. *Sturm v. Clark,* 835 F.2d 1009, 1011 (3d Cir.1987). When considering such a motion, the reviewing court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Wisniewski v. Johns–Manville Corp.,* 759 F.2d 271, 273 (3d Cir.1985); *Rogin v. Bensalem Township,* 616 F.2d 680, 685 (3d Cir.1980), *cert. denied,* 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981). A court may not dismiss the complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

In considering the motion, a district court must accept as true the facts pleaded in the complaint and any and all reasonable inferences derived from those facts. *Unger v. Nat'l Residents Matching Program,* 928 F.2d 1392, 1400 (3d Cir.1991); *Glenside West Corp. v. Exxon Co.,* 761 F.Supp. 1100, 1107 (D.N.J.1991); *Gutman v. Howard Sav. Bank,* 748 F.Supp. 254, 260 (D.N.J.1990). Moreover, it is not necessary for the plaintiff to plead evidence, and it is not necessary to plead the facts that serve as the basis for the claim. *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 446 (3d Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978); *In re*

*Midlantic Corp. S'holder Litig.*, 758 F.Supp. 226, 230 (D.N.J.1990). Legal conclusions offered in the guise of factual allegations, however, are given no presumption of truthfulness. *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

The question before the court is not whether the plaintiff will ultimately prevail; rather, it is whether the plaintiff can prove any set of facts in support of the asserted claims that would entitle the plaintiff to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). However, although the Federal Rules of Civil Procedure do not dictate that a "claimant set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 149–50 n. 3, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (quoting *Conley*, 355 U.S. at 47, 78 S.Ct. 99).

## II.  *Consumer Fraud Act*

Bergen argues that Bracco's claim in Count II under the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8–1 to –106, should be dismissed on two grounds. First, Bergen contends that the CFA does not allow a manufacturer/seller of goods, such as Bracco, to bring an action against a purchaser/wholesaler, such as Bergen. (Mem. of Law in Supp. of Def.'s Mot. to Dismiss Counts I and II of the Compl. ("Def.Br.") at 5–7; Def.'s Reply Br. in Supp. of Its Mot. to Dismiss Counts I and II of the Complaint ("Def. Reply Br.") at 1–2.) Bergen maintains that a manufacturer's sale of goods to a wholesaler or retailer, which is the transaction at issue here, is not a "consumer" transaction within the meaning of the NJCFA because the wholesaler will resell the goods rather than consume them.

(Def. Br. at 6.) Second, Bergen argues that even if the present circumstances involve a consumer transaction, a seller such as Bracco lacks standing to sue under the NJCFA. (*Id.* at 5–7.)

The NJCFA provides in relevant part:
The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

N.J.S.A. 56:8–2. The NJCFA provides a private right of action for any "person" who is harmed by such unlawful practices, N.J.S.A. 56:8–19, and defines "person" to include, among others, "any ... corporation, company, trust, business entity or association[,]" N.J.S.A. 56:8–2(d). "Merchandise" is defined to include "any objects, wares, goods commodities, services or anything offered, directly or indirectly to the public for sale." N.J.S.A. 56:8–1.

The Court determines that Bracco's claim under the CFA must be dismissed in accordance with prevailing authority. There is no dispute between the parties that a corporation may qualify as a "person" under the CFA when it finds itself in a consumer-oriented transaction. The character of the transaction, not the identity of the purchaser, determines whether the CFA is applicable. *J & R Ice Cream Corp. v. Cal. Smoothie Lic. Corp.*, 31 F.3d 1259, 1273 (3d Cir.1994). We note that New Jersey "courts have consistently concluded that purchaser of wholesale

goods for resale are not consumers within the meaning of the NJCFA." *Lithuanian Commerce Corp. v. Sara Lee Hosiery,* 179 F.R.D. 450, 469 (D.N.J.1998) (choosing to "follow the well-reasoned authorities which have determined that purchasers of wholesale goods for resale are not the consumers who may invoke the protections of the NJCFA"). Bracco acknowledges that proposition, conceding that "Defendant Bracco would not be able to sue Plaintiff Bracco for a claim involving Bracco's distribution to Bergen of defective goods." (Pl. Br. at 12.) Bracco, however, seeks to distinguish the present circumstances, maintaining that "[i]n this case, the Plaintiff manufacturer is suing Defendant wholesaler for blatantly fraudulent practices in connection with Defendant's provision of accounting, inventory and chargeback processing services to Plaintiff." (*Id.*) Bracco, therefore, argues that it was a consumer vis-a-vis Bergen by reasoning as follows: The definition of "merchandise" includes services. In this case, Bergen "was obligated, quite extensively, to provide services and perform other obligations to [Bracco]. [Bergen] committed fraudulent practices as part of that provision of services. [Bracco] is thus a consumer vis-a-vis [Bergen] as to those services and obligations." (*Id.* at 12.)

That reasoning fails to persuade the Court. Although Bracco accurately notes that fraud in connection with the sale of services is actionable under the NJCFA, the challenged services generally must be of the type sold to the general public. The entire thrust of the NJCFA is "pointed to products and services sold to consumers in the popular sense." *Neveroski v. Blair,* 141 N.J.Super. 365, 378, 358 A.2d 473, 480 (App.Div.1976). The services that Bracco contends it "consumed" are Bergen's maintaining accounting records, tracking Bergen's own inventory, and providing data reports to Bracco regarding sales by Bergen to Bracco's contract customers. Ber-

gen does not "sell" those accounting, tracking, and reporting functions to the public, either directly or indirectly. Those functions are incidental to a contract for the sale of products between a manufacturer and a wholesaler.

We find the court's reasoning in *Windsor Card Shops, Inc. v. Hallmark Cards, Inc.,* 957 F.Supp. 562 (D.N.J.1997), albeit in dicta, compelling for the present analogous circumstances. In that case, Windsor argued that it should qualify as a consumer within the meaning of the NJCFA because it purchased services from the defendant corporation related to financial planning, store planning, and merchandising. *Id.* at 567 n. 6. Rejecting that argument, the court noted that those services are not services sold to the general public and thus are not "merchandise" under the NJCFA. *Id.* According to the court in *Windsor,* those services

> can at best be characterized as promises that were implied by the [contract]. If we were to read the NJCFA as covering those "services," we would be construing the statute to allow recovery for any breached promise in connection with a contract for the sale of merchandise. We decline to allow such a broad reading of the statute. These services, if offered, were collateral to a contract for the sale of products to a wholesaler. As such, they do not qualify Windsor as a consumer under the NJCFA.

*Id.* (citation omitted). That logic carries force for the present circumstances in which services were provided ancillary to a contract.

Also supporting our decision *BOC Group, Inc. v. Lummus Crest Inc.,* 251 N.J.Super. 271, 597 A.2d 1109 (Law Div. 1990), which the Court of Appeals for the Third Circuit has discussed favorably. *See J & R Ice Cream Corp.,* 31 F.3d at 1274. In *BOC Group,* the court determined that

a corporation that purchased technology and certain support services through an "Engineering Services Agreement and Licensing Agreement" was not protected under the NJCFA. Recognizing the need for reasonable limits on the operation of the NJCFA, the court concluded that the technology and services supplied in BOC Group did not come within the definition of "merchandise" because the technology and services (1) were not "available to the public at large and sold in large quantities" or "mass produced" and (2) bore no similarity to the comprehensive definitions of goods and services promulgated by the New Jersey Division of Consumer Affairs pursuant to the NJCFA. 251 N.J.Super. at 277–79, 597 A.2d at 1112–13.

Because Bracco is not a "consumer" of "merchandise" within the meaning of the NJCFA, the Court concludes that the NJCFA is inapplicable to the circumstances presented in plaintiff's Complaint. Accordingly, Count II of the Complaint must be dismissed pursuant to Rule 12(b)(6).

### III. *Economic Loss Doctrine*

■ Bergen argues that the economic loss doctrine bars Bracco's common-law fraud claims because Bracco's breach of contract claim is based on the very conduct upon which the fraud claim is based. (Def. Br. at 7; Def. Reply Br. at 2.) The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract." *Duquesne Light Co. v. West-*

*inghouse Elec. Co.,* 66 F.3d 604, 618 (3d Cir.1995).

The New Jersey Supreme Court first approved the economic loss doctrine in *Spring Motors Distributors, Inc. v. Ford Motor Co.,* 98 N.J. 555, 489 A.2d 660 (1985), and has recently reaffirmed its commitment to that doctrine in *Alloway v. General Marine Industries, L.P.,* 149 N.J. 620, 627, 695 A.2d 264, 267 (1997) (holding that individual plaintiff, as well as commercial plaintiff, was limited to remedies under UCC when seeking to recover for purely economic loss).[1]

*Spring Motors,* however, only addressed the status of strict liability and negligence claims in a breach of contract case. "No New Jersey Supreme Court case holds that a fraud claim cannot be maintained if based on the same underlying facts as a contract claim." *Gleason v. Norwest Mortgage, Inc.,* 243 F.3d 130, 144 (3d Cir.2001). Consequently, New Jersey courts have struggled with the viability of fraud claims to recover for purely economic loss. *Lithuanian Commerce Corp.,* 179 F.R.D. at 473. The Court of Appeals for the Third Circuit has summarized the ambiguous status of the law in this area:

> The question of the continuing validity of fraud claims in cases involving frustrated economic expectations is very complex and troublesome. The United States District Court for New Jersey unequivocally has held that the New Jersey Supreme Court's reasoning in *Spring Motors,* though not explicitly addressing fraud claims, "leads … to the

---

1. In this case, the Court will consider decisions of the New Jersey Supreme Court, federal courts applying New Jersey law, the Appellate Division of the New Jersey Superior Court, and analogous decisions applying the law of other states in predicting how the New Jersey Supreme Court would decide questions of New Jersey law. *See, e.g., Boyanowski v. Capital Area Intermediate Unit,* 215 F.3d 396,

406 (3d Cir.2000); *Koppers Co. v. Aetna Cas. & Sur. Co.,* 98 F.3d 1440, 1445 (3d Cir.1996); *Wiley v. State Farm Fire & Cas. Co.,* 995 F.2d 457, 459–60 (3d Cir.1993). New Jersey trial court decisions constitute potentially persuasive but nonbinding authorities. *See, e.g., Keeley v. Loomis Fargo & Co.,* 183 F.3d 257, 269 n. 9 (3d Cir.1999).

conclusion that, as between commercial parties New Jersey will not countenance" claims for fraud other than fraud in the inducement. *Unifoil Corp. v. Cheque Printers & Encoders Ltd.,* 622 F.Supp. 268, 270–71 (D.N.J.1985). *Spring Motors* held that "as among commercial parties ... contract law, ... provides the more appropriate system [as compared to tort law] for adjudicating disputes arising from frustrated economic expectations." 98 N.J. at 581, 489 A.2d at 673.

Contrary to this proposition, the New Jersey Superior Court after Spring Motors has upheld fraud claims between commercial parties. *See Perth Amboy Iron Works, Inc. v. American Home Assurance Co.,* 226 N.J.Super. 200, 543 A.2d 1020 (App.Div.1988) [aff'd, 118 N.J. 249, 571 A.2d 294 (1990) (affirming for the reasons´ stated within appellate court's decision).] No New Jersey court, though, has explicitly considered whether these claims are barred by *Spring Motors.* Because we determine that plaintiff fails to allege sufficient facts to support its claim of fraud, making summary judgment proper, we decline to wade into this morass.

*Gleason,* 243 F.3d at 144 (quoting *Vanguard Telecommunications, Inc. v. S. New England Tel. Co.,* 900 F.2d 645, 654 (3d Cir.1990)). The parties here effectively are asking the Court to step into that continuing quagmire.

■ The parties agree that New Jersey federal and state decisions have held that fraud claims may co-exist with a contract-based cause of action. (Def. Br. at 9–10; Def. Reply Br. at 6; Pl. Br. at 14–15.) The essential dispute between the parties centers on Bergen's contention that although New Jersey cases hold that *some* fraud claims may be brought in conjunction with breach of contract claims, those fraud claims that have been permitted to proceed were premised on fraud in the inducement and not fraud in the performance of a contract. (Def. Br. at 9; Def. Reply Br. at 7.) In contrast, plaintiff contends that New Jersey law permits fraud claims to stand alongside breach of contract claims regardless of whether the fraud claim is premised on fraud in the inducement or fraud in the performance of a contract. (Pl. Br. at 14–17.)

The parties' positions present a close question for the Court, as we find authority that would justify alternative outcomes in this matter. The Court concludes, however, that the economic loss doctrine does bar Bracco's claim for common-law fraud.

The distinction between fraud in the inducement and fraud in the performance of a contract remains relevant to the application of the economic loss doctrine in New Jersey. Courts have continued to affirm "the conceptual distinction between a misrepresentation of a statement of intent at the time of contracting, which then induces detrimental reliance on the part of the promisee, and the subsequent failure of the promisor to do what he has promised." *LoBosco v. Kure Eng'g Ltd.,* 891 F.Supp. 1020, 1032 (D.N.J.1995). No decision has formally "negate[d] the distinction between fraudulent inducement extraneous to the contract and fraud in its subsequent performance." *Id.*

New Jersey federal and state decisions that have permitted a fraud claim to proceed with a breach of contract claim generally appear to have involved a fraud in the inducement of a contract or an analogous situation based on pre-contractual misrepresentations. *See Florian Greenhouse v. Cardinal IG Corp.,* 11 F.Supp.2d 521, 528 (D.N.J.1998) (permitting fraud claim, but noting that "the factual basis for the alleged fraud is extraneous to the contract," and that it "more closely resembles a fraud-in-the-inducement claim"); *LoBosco,*

891 F.Supp. At 1032 (noting that there may have been pre-contractual mispresentations mad by defendant to plaintiff); *Coastal Group, Inc. v. Dryvit Sys., Inc.,* 274 N.J.Super. 171, 178–79, 643 A.2d 649, 652 (App.Div.1994) (holding that plaintiff's action under NJCFA, which was based on pre-contractual representations, could be brought in conjunction with action under UCC); *D'Angelo v. Miller Yacht Sales,* 261 N.J.Super. 683, 686, 619 A.2d 689, 690 (App.Div.1993) (allowing fraud claim, which was based on defendant's misrepresentation of yacht, to be brought in connection with contract claim).

Further, in our most recent statement recognizing the fraud-in-the-inducement and fraud-in-the-performance distinction, this District Court stated again that the "critical issue" with regard to economic loss "is whether the allegedly tortious conduct is extraneous to the contract." *Emerson Radio Corp. v. Orion Sales, Inc.,* No. Civ. A. 95–6455, 2000 WL 49361, at *7 (D.N.J.2000), *aff'd in part, rev'd in part on other grounds,* 253 F.3d 159 (3d Cir.2001). The court in *Emerson Radio* explained that "an act that is in breach of a specific contractual undertaking would not be extrinsic, but an act that breaches some other duty would be." *Id.* The court further illustrated "with the example of fraud, to break a promise is to breach a contractual duty; to falsely state that one intends to honor a promise is a misstatement of present fact and breaches a separate and extraneous duty not to commit fraud." *Id.*

Approximately one year ago and after the decision in *Emerson Radio,* the Third Circuit stated that "New Jersey District Courts still hold that fraud claims not extrinsic to underlying contract claims are not maintainable as separate causes of action." *Gleason,* 243 F.3d at 144. In this case, Bracco's fraud claim is not extrinsic to their underlying contract claims, and this Court shall remain consistent with New Jersey District Courts' repeated holding that such a fraud claim is not cognizable as a separate cause of action. The pattern that has emerged in New Jersey decisional law is that claims for fraud in the performance of a contract, as opposed to fraud in the inducement of a contract, are not cognizable under New Jersey law. Bracco does not dispute that its common-law fraud claim relates to alleged fraud in the performance of a contract.

We also find support for our ruling is the New Jersey Supreme Court's decision in *Alloway v. General Marine Industries, L.P.,* 149 N.J. 620, 695 A.2d 264. Although the Supreme Court in *Alloway* stated that "[i]n addition to the right to recovery under the U.C.C., victims of fraud or unconscionable conduct possess substantial rights to recover for common law fraud or for violations of various state and federal statutes[,]" that position is consistent with our determination that Bracco's common-law fraud claim must be dismissed. In support of that statement that fraud claims may co-exist with claims under the U.C.C., the Supreme Court in *Alloway* cites to N.J.S.A. 12A:1–103, which provides:

> Unless displaced by the particular provisions of this Act, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, *fraud,* misrepresentation, duress, coercion, mistake, bankruptcy, or *other validating or invalidating cause* shall supplement its provisions.

N.J.S.A. 12A:1–103 (emphasis added). That citation to section 1–103, which related to "validating or invalidating" causes such as "fraud," supports Bergen's position that only claims for fraud in the inducement are cognizable in conjunction with action that the U.C.C. governs.

Further, the Supreme Court in *Alloway* "expanded the reach of the economic loss doctrine in New Jersey." *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F.Supp.2d 494, 499 (D.N.J.1999). The *Alloway* court extensively discussed the policies embodied in contract and tort law and the compelling reasons for limiting recovery for purely economic loss to contractual remedies. *Alloway*, the Supreme Court's most recent decision involving the economic loss doctrine, indicates that the Supreme Court has moved to expand, rather than contract, the economic loss doctrine. After *Alloway*, "it is now well established in New Jersey that contract remedies . . . are better suited than tort law to resolve claims for economic loss." *Boyes v. Greenwich Boat Works, Inc.*, 27 F.Supp.2d 543, 550 (D.N.J.1998).

The economic loss doctrine's underlying main purpose further moves this Court to dismiss Bracco's common-law fraud claim. The Third Circuit most recently stated, "The economic loss doctrine is designed to place a check on limitless liability . . . and establish clear boundaries between tort and contract law." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 680 (3d Cir. 2002).[2] When, as here, there are two competing and sensible interpretations of state law, the Third Circuit in *Werwinski* noted that courts "should opt for the interpretation that restricts liability, rather than expands it." *Id.* Adhering, as this Court must, to the dictates of the Third Circuit, we opt for the liability-restricting interpretation of New Jersey law given the two present competing interpretations from the parties here.[3]

Pursuant to the economic loss doctrine, the Court determines that Count I of the Complaint must be dismissed.

## CONCLUSION

The Court concludes that Bergen's motion to dismiss Count I (common-law fraud) and Count II (Consumer Fraud Act) should be granted. Those Counts of the Complaint will be dismissed.

An appropriate Order accompanies this Memorandum Opinion.

---

**2.** That the Third Circuit interpreted Pennsylvania law in *Werwinski* when it determined that the economic loss doctrine barred the plaintiff's fraudulent concealment claim, 286 F.3d at 681, is of no moment for our purposes. The court's reasoning still retain force because the economic loss doctrine's general purpose is not specific to Pennsylvania.

**3.** Bergen also argues Bracco's claim for fraudulent concealment in Count I of the Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 9(b) in that the claim does not meet the heightened pleading standard. (Def. Br. at 11–13.) We need not address that alternative basis for dismissal of Count I in light of our conclusion that the economic loss doctrine bars that claim.