**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5034-18T2

VENTURES UNLIMITED, INC.,

    Plaintiff-Appellant,

v.

NXGEN INFOTECH, INC., and
SURESH KUMAR,

    Defendants-Respondents,

and

KRANTHI
BHUSHAN PULLAGUJJU,

    Defendant.

_____

Submitted November 5, 2020 – Decided January 11, 2021

Before Judges Sumners and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-6628-17.

Law Offices of Susheela V. Verma, attorney for appellant (Nishi Patel and Susheela Verma, on the briefs).

LoFaro & Reiser, LLP, attorneys for respondents (Glenn R. Reiser, on the brief).

PER CURIAM

Plaintiff Ventures Unlimited, Inc. sued defendants Nxgen Infotech, Inc. and Suresh Kumar[1] seeking damages related to their referral of a contract worker to plaintiff. Plaintiff appeals the trial court's orders denying its motions to amend its complaint and to compel discovery. Plaintiff also appeals the court's order granting defendants' summary judgment motion dismissing its complaint with prejudice. We affirm all three orders.

I.

Plaintiff provides information technology (IT) and temporary staffing services to its clients. Nxgen offers end-to-end IT staffing and consulting solutions for short- and long-term projects. Nxgen has two employees, Kumar, its human resources manager, and his wife, its president and owner. Kumar offered plaintiff the temporary contract services of Kranthi Bushan Pullagujju to fulfill the needs of one of plaintiff's clients, Larson &Toubro Infotech Ltd. (L&T). In doing so, he provided Pullagujju's resume, and identification and

---

[1] Also sued was Kranthi Bushan Pullagujju. However, he was never served and is not a party to this appeal.

immigration documents. L&T interviewed a person purporting to be Pullagujju at least three times and used a third-party service to investigate his background before entering into a supplier contract with plaintiff to retain Pullagujju's services.

Relevant to this appeal, the contract provided:

> [Nxgen] warrants that all information provided by [its] employees in consideration for providing services to [plaintiff] and its [c]lients is true to the best of [Nxgen's] and [Nxgen's] employees['] knowledge. This includes, but is not limited to, information provided in resumes, references, and interviews. [Nxgen] certifies that personnel provided under this Agreement are not restricted from providing services to [plaintiff's] [c]lient by any employment or other agreements and will not create any conflict of interest. [Nxgen] understands that any misstatements or lack of candor by [Nxgen] or its employees constitute[s] a material breach of this Agreement and may be grounds for immediate termination of individual [w]ork [o]rders, or the Agreement in its entirety, with no liability to [plaintiff.]
>
>         . . . .
>
> [Plaintiff] and [Nxgen] agree that neither shall be entitled to recover from the other for any incidental, indirect, special or consequential damages sustained resulting from the action or inaction of the other under this Agreement, whether the cause of action against the other is in contract, breach of warranty, tort, gross negligence or otherwise, including, but not limited to lost profits, lost opportunities and/or delay damages,

A-5034-18T2

even if the other party was advised of or was aware of the potential for damages.

The contract also stated, "[n]o other agreements or understandings, whether written or oral, including proposals, quotations or acknowledgements, shall be considered as a part of this Agreement."

Pullagujju, assigned to work for one of L&T's clients, was terminated about ten days later because he was not qualified to perform the required work duties. Plaintiff was not billed by defendants for Pullagujju's services as set forth in the contract.

## II.

We first address the trial court's order denying plaintiff's motion for leave to amend its complaint. Plaintiff sued defendants for lost profits, loss of anticipated business, and damaged reputation because L&T "suspended" its contract due to the referral of Pullagujju. Plaintiff maintained that in offering Pullagujju's services to L&T, it relied upon Kumar's knowingly fabricated documentation regarding Pullagujju's experience and misrepresentations that he had worked for Nxgen. Plaintiff further alleged that an "impersonator" of Pullagujju appeared at the interview with L&T.

Plaintiff's initial complaint alleged breach of contract, fraud, conspiracy, tortious interference with contractual relationship, and unjust enrichment.

Allegations of breach of covenant of good faith and fair dealing were made solely as to Nxgen. Plaintiff's motion—filed about a month prior to the third extended discovery end date and after written discovery and depositions were completed—sought to add new claims regarding piercing the corporate veil and fraud in the inducement. In its amended counts, plaintiff demanded "compensatory and punitive damages," as it did in its initial complaint.

Plaintiff essentially argues that its amendment should have been granted based upon the liberal standard found in Rule 4:9-1. Prime Acct. Dep't. v. Twp. of Carney's Point, 212 N.J. 493, 511 (2013); Rosario v. Marco Const. and Mgmt., Inc., 443 N.J. Super. 345, 352 (App. Div. 2016). Plaintiff reasons the amendment would not have caused any delays, prejudice, or burden on any party or the court. We separately address the rejected new claims.

A. Fraud in the Inducement

Plaintiff contends the addition of a fraud in the inducement claim was "fundamentally necessary . . . so that its claims against [d]efendants were streamlined and compatible with what was discovered during the litigation process." Plaintiff acknowledges, as it did before the trial judge, that the fraud count in the original complaint is distinct from fraud in the inducement. The judge, citing Cutler v. Dorn, determined plaintiff's motion to add the claim was

A-5034-18T2

not warranted "[w]here[, as here,] the merits are marginal and the substance generally irrelevant to the main claim" and the proposed amendment would "unduly protract the litigation and cause delay." Cutler, 390 N.J. Super. 238, 257 (App. Div. 2007) (holding that the trial court's denial of plaintiff's motion to amend his discrimination claim at trial to include a claim of retaliation was warranted where "defense was not on notice of an intended additional claim . . . and would need additional time to prepare to defend such a claim" and allowing the amendment "would 'change the entire complexion of the case'"), aff'd in part, rev'd in part, 196 N.J. 419, 441 (2008). The judge told plaintiff's counsel:

> You have a complaint that includes fraud. I don't see fraud in the inducement, anything that you've told me, that you couldn't have pled in the beginning. I haven't read the transcript again[,] but I remember on the original summary judgment return date,[2] we argued about it and the language is pretty — all[-]encompassing in that contract.
>
> And so one of the things — whether you did it off the cuff or whether or not you had already thought it through or maybe that was part of your ultimate strategy[,] but you said, look, I don't need to be dictated to by the language of this contract and its strictness, including torts and all the other things that it doesn't allow you to sue for because I wouldn't have entered into this if I had known that they were going to send the

---

[2] Defendants' initial summary judgment motion was denied without prejudice for being "unripe." Defendants' refiled summary judgment motion is the subject of this appeal.

A-5034-18T2

wrong person. So you knew it at that time. You could have amended immediately. You already made those arguments to me.

. . . .

. . . But you have not provided me with reasonable grounds to amend the complaint at this time with something you've already known about and seemingly was the genesis of your whole case.

We take no issue with the judge's finding that allowing the amendment would further prolong the litigation. Plaintiff was aware of facts relied upon to support a fraud in the inducement claim when the litigation commenced. By the time plaintiff moved to amend, discovery had already been extended discovery three times–the last time to allow plaintiff the opportunity to procure an expert report. Although the amendment request was not made at trial as in Cutler, to oppose these new allegations, defendants would certainly request an extension or re-opening of discovery to challenge the claim that they fraudulently induced plaintiff to enter into the contract. The court would be hard pressed not to grant such a request.

Moreover, we favor defendants' argument that, as a matter of law, the proposed fraud in the inducement amendment does not allow plaintiff the compensatory damages—lost profits, loss of anticipated business, and harm to reputation—and punitive damages they sought as relief for their new claim.

7

Fraud in the inducement provides a cognizable basis for equitable relief in the event a false promise induced reliance. See Lipsit v. Leonard, 64 N.J. 276, 283 (1974). However, "[i]n an action for equitable fraud, the only relief that may be obtained is equitable relief, such as rescission or reformation of an agreement and not monetary damages." Daibo v. Kirsch, 316 N.J. Super. 580, 591-92 (App. Div. 1998) (quoting Enright v. Lubow, 202 N.J. Super. 58, 72 (App. Div. 1985)). Plaintiff did not demand recission of the contract. And had it done so, there were no damages because it never paid defendants for referring Pullagujju. Hence, there was no legal reason for the judge to allow plaintiff to amend its complaint to include a fraud in the inducement claim. See Murray v. Plainfield Rescue Squad, 418 N.J. Super. 574, 591 (2011) (citing Notte v. Merch.'s Mut. Ins. Co.,185 N.J. 480, 501 (2006)).

In sum, the "[l]ateness of the motion coupled with apparent lack of merit virtually dictates denial." Verni ex rel. Burstein v. Harry M. Stevens, Inc., 387 N.J. Super. 160, 197 (App. Div. 2006) (quoting Pressler, Current N.J. Court Rules, cmt. 2.2.2. on R. 4:9-7 (2006)).

B. Piercing the Corporate Veil

Plaintiff maintains that piercing the corporate veil is a well-established cause of action. See Stochastic Decisions, Inc. v. DiDomenico, 236 N.J. Super.

388, 393 (App. Div. 1989). Plaintiff asserts that when a corporate officer's actions were the dominating force of bad conduct, the corporate veil can be pierced. Kugler v. Koscot Interplanetary, Inc., 120 N.J. Super. 216, 255-57 (Ch. Div. 1972). Focus is "on the acts of the individual employee or corporate officer to determine whether the specific individual had engaged in conduct" that was prohibited. Allen v. V&A Bros., Inc., 208 N.J. 114, 132 (2011).

Plaintiff argues there is "little distinction between [Nxgen] and [Kumar that] would warrant an invocation of the corporate veil doctrine." Plaintiff contends that "all of the relevant elements for piercing the corporate veil" exist because Kumar and his wife are the only employees of Nxgen, which is run out of their home; the company is owned exclusively by the wife; and Kumar is in fact the company's president. In addition, Kumar was the contact person for all dealings with plaintiff and signed all pertinent documents.

We see no abuse of discretion in the judge's denying amendment of this application. The judge found its addition of this claim would be out of line for the same reason he did not allow the fraud in the inducement claim amendment. In addition, had the amendment been allowed it would have been futile for the reasons stated below in affirming the summary judgment dismissal of the complaint. See Verni ex rel. Burstein, 387 N.J. Super. at 197.

At the same proceeding where the judge denied plaintiff's motion to amend, he denied the motion to compel discovery. Plaintiff sought to compel Nxgen's: W-2 statements for 2017; I-9 documents for 2017; payroll records for 2017 to the present; bank statements from January 1, 2017 to the present; W-2 employees' names for 2017; personnel names whose services were procured for third parties since 2014; third-party employment contracts since 2014; and e-verification history during 2017. Contending defendants' prior discovery responses were fictitious, plaintiff contends our liberal discovery standards under Rule 4:10-2(a) were not applied. See Payton v. N.J. Tpk. Auth., 148 N.J. 524, 535 (1997); Shanley & Fisher, P.C. v. Sisselman, 215 N.J. Super. 200, 216 (App. Div. 1987). We disagree.

An appellate court "generally defer[s] to a trial court's disposition of discovery matters unless the court has abused its discretion or its determination is based on a mistaken understanding of the applicable law." Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011) (quoting Rivers v. LSC P'ship, 378 N.J. Super. 68, 80 (App. Div. 2005)). The judge gave cogent reasons for denying plaintiff's motion. He stated:

> . . . [I]t's too far afield, and I don't think it's warranted.

. . . .

> . . . If you think you have enough to impeach a man's credibility, there's a stopping point and I can't fathom, really, what the banking records are going to show without an exhaustive review of something defined [as] a needle in a haystack . . . . I did rule on it. If I didn't properly [en]unciate it at the time, I meant to but not only was there a technical violation[,] but I think it's a fishing expedition, not reasonably calculated to lead to discoverable materials . . . . I think, focus in on what your allegations are in your complaint, which is about [] one — placement of one individual. So[,] I'm not going to give you that.

We discern no abuse of discretion in the judge's ruling. Moreover, as defendants point out, plaintiff's contention is weakened by its failure to contest the judge's prior order quashing the subpoena of a Virginia bank seeking Nxgen's banking records.

## IV.

Plaintiff contends the judge erred in dismissing its complaint because viewing the facts in the light most favorable to its position, defendants' failure to perform their contractual duties caused it to sustain busines losses. In addition, citing an unpublished federal district court opinion, plaintiff argues defendants' tortious conduct of fraud or misrepresentation concerning Pullagujju——fabricated resume, impostor interviewee, misrepresentations

11

about the background investigation——predates their contract, inducing plaintiff to enter into their contract, which is therefore unenforceable. Plaintiff further asserts that its tort claims cannot be barred by the economic loss doctrine. These arguments lack merit.

We apply "the same standard governing the trial court" when reviewing a summary judgment order. Oyola v. Xing Lan Liu, 431 N.J. Super. 493, 497 (App. Div. 2013). We accord no deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013). We detail the undisputed facts presented and consider them in the light most favorable to the party opposing summary judgment. See Angland v. Mountain Creek Resort, Inc., 213 N.J. 573, 577 (2013) (citing Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523 (1995)). Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact" and "the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

The parties entered into a binding supplier agreement containing a no liability provision that unequivocally bars either party from pursuing damages "not limited to lost profits [or] lost opportunities" under the agreement due to "the action or inaction of the other . . . whether the cause of action against the other is in contract, breach of warranty, tort, gross negligence or otherwise,

. . . ." Hence, in viewing plaintiff's claims as contract-based, seeking "consequential damages [and] loss of profit[,]" the court correctly found that this contractual provision "says you can't sue [defendants] for that."

In the alternative, the judge determined that plaintiff's recovery under a tort theory is barred by the economic loss doctrine. The doctrine prohibits a plaintiff "from recovering in tort economic losses to which their entitlement only flows from contract." Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co., 226 F. Supp. 2d 557, 562 (D.N.J. 2002) (quoting Duquesne Light Co. v. Westinghouse Elec. Co., 6 F.3d 604, 618 (3d Cir. 1995)). The doctrine precludes a tort remedy in "a contractual relationship unless the breaching party owes an independent duty imposed by law." Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 316-17 (2002) (holding that "the existence of duties that are specifically imposed by law in New Jersey . . . can be enforced separately and apart from contractual obligations."). Because plaintiff failed to establish defendants had an independent duty of care under the law, the judge was correct in holding it could not pursue tort claims against defendants. The judge's decision to grant summary judgment is legally sound.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5034-18T2