**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3056-23

445 YYH LLC,

     Plaintiff-Appellant,

v.

BLUE MOON LOUNGE, LLC,
KAMINI SHAH, and HARSH
DESAI,

     Defendants-Respondents.

_____

Submitted May 29, 2025 – Decided June 6, 2025

Before Judges Natali and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-3427-23.

Brach Eichler LLC, attorneys for appellant (Thomas Kamvosoulis and Aladekemi Omoregie, on the briefs).

Micci J. Weiss Law, LLC, attorney for respondents (Micci J. Weiss, on the brief).

PER CURIAM

Plaintiff 445 YYH LLC appeals from the April 26, 2024 order dismissing with prejudice its complaint against defendants Blue Moon Lounge, LLC (Blue Moon), Kamini Shah, and Harsh Desai for failure to state a claim upon which relief can be granted pursuant to Rule 4:6-2(e). Because plaintiff's complaint adequately set forth the fundaments of viable causes of action, we reverse and remand.

We summarize the facts alleged, giving plaintiff the benefit of every reasonable inference. See Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021). In early 2023, the parties began discussions concerning the formation of a joint venture whereby they would apply for and obtain a license from the New Jersey Cannabis Regulatory Commission (CRC) to sell recreational cannabis and related products (the dispensary) in Paterson. Shah and Desai induced plaintiff to take certain steps on their behalf, including making initial expenditures on behalf of the joint venture and undertaking the effort and expense to obtain the required municipal approval for CRC licensure.

To induce plaintiff to take these steps, Shah and Desai made material misrepresentations to plaintiff that were false, deceptive, and misleading. These included that defendants would: (1) enter a lease to rent property from plaintiff from which they would operate the dispensary and make all payments under the

lease; (2) reimburse plaintiff for all expenses it incurred in connection with the joint venture, including costs associated with seeking municipal approval for the dispensary; and (3) grant plaintiff a twenty-five percent stake in the business. Plaintiff took certain steps in reliance on defendants' representations, including applying for municipal approval and incurring substantial expenses in furtherance of the joint venture.

On July 7, 2023, plaintiff, as landlord, and Blue Moon, as tenant, entered into a lease agreement (the Lease) for a premises located at 445 East 16th Street in Paterson to operate the dispensary. The Lease provides the payment of rent to plaintiff "shall commence on the first day after the expiration of fourth month following the [c]ommencement [d]ate."

"Commencement [d]ate means the date on which [Blue Moon] receives the [m]unicipal [a]pproval." "Municipal [a]pproval means approval from the applicable government authorities in the City of Paterson . . . to grant [Blue Moon] the [c]annabis [l]icenses." "Cannabis [l]icenses means any licenses, permits, certifications, registrations, accreditations, approvals, waivers, variances[,] and other authorizations issued by any governmental authority to allow [Blue Moon] to operate a lawful Class 5 cannabis dispensary from the [p]remises."

A-3056-23

The Lease provides Blue Moon is obligated to pay plaintiff rent in the amount of $40,000 per month beginning on the commencement date. It also provides Blue Moon shall reimburse plaintiff $60,000 for the municipal approval application fee and pay a $160,000 security deposit within three days of the date Blue Moon receives municipal approval.

The Lease contains a "municipal approval contingency" that provides:

> Notwithstanding anything to the contrary contained herein, the parties acknowledge and agree that in order for the [c]ommencement [d]ate to commence[, Blue Moon] must obtain the [m]unicipal [a]pproval (the "[m]unicipal [a]pproval [c]ontingency") within two . . . months after the date hereof (the "[m]unicipal [a]pproval [c]ontingency [o]utside [d]ate"). [Blue Moon] agrees to use diligent good faith efforts to obtain the [m]unicipal [a]pproval as soon as reasonably practicable[,] and [Blue Moon] shall promptly submit written evidence to [plaintiff] of the issuance of the [m]unicipal [a]pproval as soon as the [m]unicipal [a]pproval is obtained by [Blue Moon]. If for any reason the [m]unicipal [a]pproval [c]ontingency has not been satisfied by the [m]unicipal [a]pproval [c]ontingency [o]utside [d]ate, then [plaintiff] or [Blue Moon] may terminate this Lease by written notice to the other party, in which event this Lease shall terminate, [plaintiff] promptly shall return to [Blue Moon] the [s]ecurity [d]eposit paid by [Blue Moon] to [plaintiff] under this Lease (if any), and the parties shall thereafter have no further obligations to each other except for those obligations that expressly survive the termination of this Lease. Following satisfaction of the [m]unicipal [a]pproval [c]ontingency, [Blue Moon] shall at all times thereafter during the Term of this Lease maintain

4

the required [m]unicipal [a]pproval and any other State mandated approvals and licenses in full force and effect. [Blue Moon] shall be obligated to reimburse [plaintiff] for the [m]unicipal [a]pproval [a]pplication [f]ee within three . . . days after [Blue Moon] receives [m]unicipal [a]pproval.

On July 18, 2023, plaintiff obtained the required municipal approval by way of a resolution for Blue Moon to operate the dispensary at the premises from the City of Paterson (the Resolution). In relevant part, the Resolution provides:

> BE IT RESOLVED BY THE MUNICIPAL COUNCIL OF THE CITY OF PATERSON that to the best of the knowledge of the Council operating a Class 5 Retailer at the said location would violate no local Ordinance if (i) the City Code were to be amended to relax or eliminate the requirement of three hundred . . . foot distance from residences, or (ii) the location were to be moved to comply with the said requirement, or (iii) the nearby residences were to be converted to non-residential use; and
>
> BE IT FURTHER RESOLVED approval would [not] exceed our limit of three . . . retailers; and
>
> BE IT FURTHER RESOLVED, that the Municipal Council accordingly expresses support for the application of Blue Moon . . . to utilize the said location for cannabis retail sales; and
>
> BE IT FURTHER RESOLVED that the said finding of suitability shall not substitute for local planning and zoning approvals, nor shall the said expression of support substitute for a Resolution to authorize a local license, each of which shall be duly considered and independently determined.

A-3056-23

## STATEMENT OF PURPOSE

This Resolution of Support, which an applicant for State cannabis licensing must submit to the State as part of the licensing process, is adopted in support of the application of Blue Moon . . . to utilize the aforesaid location for cannabis retail sales.

On July 26, the director of the Paterson Office of Economic Development confirmed "[c]annabis retail facilities are allowed in the I-1 Industrial Districts" where the premises is located. Specifically, he wrote:

Blue Moon . . . has requested a zoning guidance for [445 East 16th Street]. The commercial site . . . is located in the I-1 Industrial District and thus conforms to allowable zoning. Cannabis retail facilities are allowed in I-1 Industrial Districts as a Conditional Use per § 500-5.38.

Plaintiff "confirmed with the CRC that the Resolution is the required [m]unicipal [a]pproval to submit to the CRC to obtain the necessary license to operate a retail cannabis facility." Plaintiff notified defendants it obtained municipal approval as required by the Lease.

On September 11, defendants purported to terminate the Lease contending the required municipal approval was not obtained. On December 11, plaintiff discovered "that in July 2023, Shah and Desai began shopping the cannabis license to other potential locations in an effort to defraud [p]laintiff and cut [plaintiff] out of the deal." Plaintiff's claim is based on a letter dated December

6

8, 2023, addressed to Shah in which Paterson's Department of Economic Development wrote:

> Please accept this letter as confirmation of your notification to the City of Paterson regarding the relocation of your proposed Class 5 Cannabis Retail Dispensary, Blue Moon . . . .  As per Blue Moon's notification, address of the dispensary is amended from 445 E[ast] 16th Street to 72 2nd Avenue.
>
> [Paterson] herby makes the aforementioned amendment to Blue Moon's application.  This action is consistent with the City of Paterson['s] Resolution Supporting the State Application of Blue Moon . . . to Operate a Class 5 Canabsis Retail Facility . . . .

On December 12, plaintiff filed its complaint in this action asserting causes of action for:  (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) declaratory judgment that the approval it obtained was the municipal approval required by the Lease; and (4) fraudulent inducement against Shah and Desai.

Defendants moved to dismiss for failure to state a claim pursuant to Rule 4:6-2(e).  After hearing oral argument, the court entered an order granting the motion and dismissing plaintiff's complaint with prejudice, supported by a written opinion.  It determined:

> While [p]laintiff has provided ample evidence that a retail cannabis facility could be operated at the subject property, no license was ever acquired as was

7

required by the [L]ease. The July 18, 2023 Resolution explicitly stated that it was not a license. The letter from [the] Director . . . was also not a license but was given as zoning guidance. Thus, based upon the Resolution and the zoning guidance, [d]efendants would have had to get conditional use approval or would have had to move the location of the cannabis retailer to an area that was further from residential property to obtain a license. That did not occur within two months from the [L]ease being signed, therefore [d]efendants had a right . . . to terminate the Lease.

The court did not address plaintiff's causes of action for a declaratory judgment, breach of the covenant of good faith and fair dealing, or fraudulent inducement.

On appeal, plaintiff contends the court improperly dismissed its breach of contract and declaratory judgment claims because it clearly alleged the necessary elements of those claims. Plaintiff also asserts the question of whether the Resolution satisfied its obligation to obtain municipal approval under the Lease presents a factual dispute subject to discovery. It claims the parties have a "fundamental disagreement over whether [p]laintiff satisfied the [m]unicipal [a]pproval requirement[]," which "presents a substantial controversy between the parties that is ripe for declaratory relief."

Plaintiff argues the court misinterpreted the Lease when it found plaintiff failed to obtain a "license" as required by the Lease. It contends the court

A-3056-23

improperly equated obtaining municipal approval with obtaining a cannabis license. The Lease "expressly recognizes that the requisite [m]unicipal [a]pproval is obtained from 'the applicable government authorities in the City of Paterson,'" while a cannabis license can only be obtained from the CRC. Plaintiff argues "obtaining [m]unicipal [a]pproval is a requisite interim step in the broader cannabis licensing process." The Lease obligated plaintiff to obtain municipal approval, not a cannabis license.

"Rule 4:6-2(e) motions to dismiss for failure to state a claim upon which relief can be granted are reviewed de novo." Baskin, 246 N.J. at 171 (citing Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019)). In considering a Rule 4:6-2(e) motion, "[a] reviewing court must examine 'the legal sufficiency of the facts alleged on the face of the complaint,' giving the plaintiff the benefit of 'every reasonable inference of fact.'" Ibid. (quoting Dimitrakopoulos, 237 N.J. at 107).

A complaint must be searched "in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div.

1957)). "At this preliminary stage of the litigation[,] the [c]ourt is not concerned with the ability of [the] plaintiff[] to prove the allegation[s] contained in the complaint." Ibid. (citing Somers Constr. Co. v. Bd. of Educ., 198 F. Supp. 732, 734 (D.N.J. 1961)). "Nonetheless, if the complaint states no claim that supports relief, and discovery will not give rise to such a claim, the action should be dismissed." Dimitrakopoulos, 237 N.J. at 107.

We are convinced the court improperly granted defendants' motion to dismiss. Plaintiff alleged a viable cause of action for breach of contract. To sufficiently plead its breach of contract claim, plaintiff was required to show (1) "the parties entered into a contract containing certain terms"; (2) "plaintiff[] did what the contract required [it] to do"; (3) "defendant[] did not do what the contract required [it] to do"; and (4) "defendant['s] breach, or failure to do what the contract required, caused a loss to . . . plaintiff[]." Goldfarb v. Solimine, 245 N.J. 326, 338-39 (2021) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016)).

Here, plaintiff alleged it satisfied its obligation to obtain municipal approval as required by the Lease by obtaining the Resolution, and defendant failed to satisfy its obligations under the Lease causing plaintiff to suffer a loss.

Those allegations are sufficient to survive a motion to dismiss for failure to state a claim.

Likewise, plaintiff set forth a viable claim for a declaratory judgment. Pursuant to N.J.S.A. 2A:16-53, the New Jersey Declaratory Judgment Act,

> [a] person interested under a . . . written contract . . . whose rights, status[,] or other legal relations are affected by a . . . contract[,] . . . may have determined any question of construction or validity arising under the instrument, . . . and obtain a declaration of rights, status[,] or other legal relations thereunder.

"A declaratory action . . . is proper provided [(1)] there is a justiciable controversy, [(2)] the party claiming the relief has standing, and [(3)] there are no adequate or appropriate alternative remedies." Amato v. Twp. of Ocean Sch. Dist., 480 N.J. Super. 239, 252 (App. Div. 2024) (quoting Lab. Ready Ne., Inc. v. Dir., Div. of Tax'n, 25 N.J. Tax 607, 612 (2011)). "A court should liberally construe and administer the [Declaratory Judgment] Act to accomplish this general purpose." ML Plainsboro Ltd. P'ship v. Twp. of Plainsboro, 316 N.J. Super. 200, 204 (App. Div. 1998) (citing N.J. Home Builders Ass'n v. Div. on Civ. Rights, 81 N.J. Super. 243, 251 (Ch. Div. 1963)).

Plaintiff alleged a justiciable controversy over the interpretation and construction of the Lease. Specifically, whether the Resolution satisfied its

obligation to obtain municipal approval. Those allegations are sufficient to set forth a viable claim for a declaratory judgment.

We are persuaded the court mistakenly conflated the requirement to obtain municipal approval with a cannabis license. The New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act (CREAMMA), N.J.S.A. 24:6I-31 to -56, vests the CRC with "all powers necessary or proper" to execute its duties, including:

> (1) To regulate the purchase, sale, cultivation, production, manufacturing, transportation, and delivery of cannabis or cannabis items . . . ;
>
> (2) To grant, refuse, suspend, revoke, cancel, or take actions otherwise limiting licenses or conditional licenses for the sale . . . . of cannabis items, or other licenses in regard to cannabis items, and to permit, in the [CRC's] discretion, the transfer of a license between persons.
>
> [N.J.S.A. 24:6I-34(b)(1) to (2).]

CREAMMA provides a business intending to sell cannabis must obtain a cannabis retailer license (CRL) issued by the CRC to operate a premises where cannabis is sold. N.J.S.A. 24:6I-42. CREAMMA's corresponding regulatory framework, N.J.A.C. 17:30-1.1 to -8.3, sets forth the documentation a prospective business must submit to the CRC in their application.

12

To receive a CRL license, an applicant must submit to the CRC, among other things:

> 9. Proof of local support, which shall be demonstrated by a resolution adopted by the municipality's governing body, or where the municipality has no governing body, a written letter of support from the municipality's executive.
>
> [N.J.A.C. 17:30-7.10(b)(9).]

"'Proof of local support' is embodied in a municipal governing body's resolution." Big Smoke LLC v. Twp. of W. Milford, 478 N.J. Super. 203, 219 (App. Div. 2024) (citing N.J.A.C. 17:30-7.10(b)(7) to (9)).

The court's determination plaintiff failed to satisfy the municipal approval requirement in the Lease because it did not obtain a "license" was incorrect. Plaintiff was obligated to obtain municipal approval from Paterson, not a license from the CRC. In fact, Paterson is not authorized under CREAMMA to issue a cannabis license.

There is at least a plausible argument, as plaintiff contends, the municipal approval contemplated by the Lease was limited to "[p]roof of local support . . . demonstrated by a resolution adopted by the municipality's governing body" as required by CREAMMA. It was improper, on a motion to dismiss, for the court to delve into the parties' intent and then determine plaintiff

failed to satisfy its obligations under the Lease despite a genuine dispute over the interpretation of the terms of the contract.

The court did not address plaintiff's claims for breach of the covenant of good faith and fair dealing, or fraudulent inducement against Shah and Desai. To sufficiently plead a fraudulent inducement claim, a plaintiff must demonstrate: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the [party asserting fraud] of its falsity; (3) an intention that the other [party] rely on it; (4) reasonable reliance thereon by the other [party]; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997) (citing Jewish Ctr. of Sussex Cnty. v. Whale, 86 N.J. 619, 624-25 (1981)). Plaintiff alleged the elements of a viable fraudulent inducement claim against Shah and Desai.

Defendants' argument plaintiff's fraudulent inducement claim is barred by the economic loss doctrine is unpersuasive. The economic loss doctrine prohibits the "recover[y] in tort economic losses to which their entitlement only flows from a contract." Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co., 226 F. Supp. 2d 557, 562 (D.N.J. 2002) (quoting Duquesne Light Co. v. Westinghouse Elec. Co., 66 F.3d 604, 619 (3d Cir. 1995)). Fraud in the inducement is fraud that induces another party to enter a contract. Walid v.

Yolanda for Irene Couture, 425 N.J. Super. 171, 186 (App. Div. 2012). The economic loss doctrine does not apply to fraud in the inducement claims. E.g., Bracco Diagnostics, Inc., 226 F. Supp. 2d at 563-64; G&F Graphic Servs., Inc., v. Graphic Innovators, Inc., 18 F. Supp. 3d 583, 590-91 (D.N.J. 2014).

The obligation of good faith and fair dealing exists in every contract, "including those contracts that contain express and unambiguous provisions permitting either party to terminate the contract without cause." Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 421 (1991). The implied covenant of good faith and fair dealing means that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Id. at 420 (quoting Palisades Props., Inc. v. Brunetti, 44 N.J. 117, 130 (1965)).

Here, plaintiff alleges defendants improperly refused to perform and intentionally, willfully, and maliciously breached their obligations under the Lease. Plaintiff supports this claim with evidence defendants were surreptitiously attempting to transfer the municipal approval plaintiff obtained to another location at the same time they were seeking to terminate the Lease. Those allegations are sufficient to set forth a viable cause of action.

The court improperly granted defendants' motion to dismiss with prejudice. On a motion to dismiss, "the [c]ourt is not concerned with the ability of [the] plaintiff[] to prove the allegation[s]." Printing Mart-Morristown, 116 N.J. at 746. Rather, the test is "whether the fundament of a cause of action may be gleaned even from an obscure statement of claim." Ibid. Plaintiff plainly satisfied that standard and is entitled to conduct discovery on its claims.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3056-23